# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

Adair v State of Michigan

Docket No. 147794. Argued October 9, 2014 (Calendar No. 1). Decided December 22, 2014.

Daniel Adair and more than 450 school districts, along with one individual taxpayer from each district, brought an original action under the Headlee Amendment in the Court of Appeals against the state of Michigan, the Michigan Department of Education, the state budget director, the state treasurer, and the state superintendent of public instruction, alleging that the amount of the appropriation under MCL 388.1752a for school year 2010-2011 was inadequate to compensate the school districts for the new and increased costs of collecting and reporting information to the Center for Educational Performance and Information (CEPI). Plaintiffs amended their complaint to include a similar challenge to the following school year's appropriation. The Court of Appeals assigned the case to a special master, Michael Warren, J. After discovery, defendants moved for summary disposition, claiming that plaintiffs could not produce any evidence of the amount of necessary increased costs and that in any case, an additional appropriation under MCL 388.1622b(1) had fully funded the mandates. The special master denied defendants' motion, finding that plaintiffs had presented sufficient evidence to show that the state had underfunded the mandates. He also ruled that plaintiffs had a higher burden of proof that required them to produce evidence of specific dollar-amount increases in the costs incurred. At trial, plaintiffs' counsel indicated that plaintiffs would not attempt to prove specific dollar amounts of underfunding, but would show through expert testimony that the Legislature's method of determining the requisite amount of funding was materially flawed and that the appropriation therefore could not be constitutionally adequate. In light of plaintiffs' refusal to present proofs on the specific amount of the shortfall, defendants moved for an involuntary dismissal. Although plaintiffs insisted that because they had brought a declaratory action, they did not need to quantify the underfunding, but only needed to show that an underfunding had occurred, the special master granted defendants' motion. The special master cited *Adair v Michigan*, 486 Mich 468 (2010) (*Adair I*), in which the Supreme Court affirmed a declaratory judgment that the Legislature had violated the prohibition of unfunded mandates (POUM) provision of the Headlee Amendment, holding that when the state provides no funding at all for a mandate, a POUM claim does not require proof of the specific increased costs necessitated by the state mandate. Rather, the plaintiff need only establish that the state imposed on it a new or increased level of activity without providing any funding to pay for it. The special master observed, however, that plaintiffs had overlooked the factual distinction between *Adair I* (in which no appropriation had been made) and their case (in which appropriations were made). Both parties filed objections. The Court of Appeals, O'CONNELL,

P.J., and TALBOT and OWENS, JJ., disagreed with the special master's ruling on the appropriate burden of proof but agreed with him in all other respects. The panel concluded that the special master had relied too heavily on the fact that *Adair I* involved no legislative funding while this case involved a claim for underfunding. According to the panel, *Adair I* stood for the proposition that neither Const 1963, art 9, § 29 nor the relevant provision of the Headlee implementing statutes required plaintiffs to prove how much their districts' costs had increased as a result of a new or increased mandate. Instead, plaintiffs had the burden to present sufficient evidence to allow the trier of fact to conclude that the Legislature's method of determining the amount of the appropriation was so flawed that it failed to reflect the actual cost to the state if the state were to provide the activity or service mandated. The panel concluded that plaintiffs were prepared to meet this burden through expert testimony. The Court of Appeals granted plaintiffs a declaratory judgment in part and remanded the case to the special master to reopen the proofs. 302 Mich App 305 (2013). Defendants applied for leave to appeal, and plaintiffs applied for leave to cross-appeal. The Supreme Court granted defendants' application but denied plaintiffs' application. 495 Mich 937 (2014).

In an opinion by Chief Justice YOUNG, joined by Justices MARKMAN, KELLY, ZAHRA, MCCORMACK, and VIVIANO, the Supreme Court *held*:

A plaintiff who brings a Headlee claim alleging that the Legislature's appropriation to a local unit of government failed to fully fund the cost of a new or increased service or activity required of that local unit must allege and prove the specific amount of the shortfall.

1. Const 1963, art 9, § 25 (part of the Headlee Amendment) provides that the state is prohibited from (1) requiring any new or expanded activities by local units of government without full state financing, (2) reducing the proportion of state spending in the form of aid to local units, or (3) shifting the tax burden to local units. The maintenance of support (MOS) provision of Const 1963, art 9, § 29 prohibits the state from reducing the state financed proportion of the necessary costs of any existing activity or service required of local units by state law. The prohibition of unfunded mandates (POUM) provision of article 9, § 29 prohibits the Legislature or a state agency from requiring a new activity or service or an increase in the level of any activity or service beyond that required by existing law by a local units of government unless there is a state appropriation to pay the local unit for any necessary increased costs. Plaintiffs brought a POUM claim in this case, asserting that the state had failed to provide adequate funding for increased services under the CEPI mandates.

2. Defendants contended that the school districts' acceptance of the discretionary payments made under MCL 388.1622b(1) constituted a waiver of any claim that the Legislature has failed to fulfill its Headlee obligations. Waiver, however, is the intentional relinquishment of a known right. All that the appropriation requires is the district's compliance with the statute's reporting mandates. Nothing in the statute indicates that by accepting the appropriation, the districts relinquished their right to bring a constitutional challenge to the adequacy of funding.

3. Headlee jurisprudence requires a plaintiff making a MOS or POUM claim to show the type and extent of the alleged shortfall in order to prove its case, even when the plaintiff requested only declaratory relief. *Adair I* recognized a narrow exception to this requirement,

holding that when the state failed to make any appropriation to fund an increased level of activity or service mandated by the state, the plaintiff need not establish the particular amount of increased costs. Instead, if the plaintiff proves that the state required a new or increased level of activity or service without providing any funding, the burden shifts to the state to demonstrate that no state funding was required because the requirement did not actually increase costs or the increased costs were not necessary. Both MOS and POUM claims require a close look at the Legislature's appropriation in comparison with the mandate to evaluate whether the appropriation is sufficient to meet Headlee obligations, but this is qualitatively different from a POUM claim in which the Legislature failed to appropriate any funding at all. When the Legislature has made some appropriation, it can argue that the appropriation was sufficient to meet its Headlee obligations. *Adair I* involved the complete absence of funding. For a POUM claim alleging no funding, all that a plaintiff needs to show is that the mandate required some increased level of activity or service. Therefore, *Adair I* is limited to situations in which the Legislature has not made any appropriation to cover the cost of a new or increased mandate. It does not apply to article 9, § 29 claims in which some funding was appropriated to cover the cost of a new or expanded mandate, and the plaintiff must instead allege and prove the specific amount of the purported funding shortfall, i.e., the extent of the necessary increased costs of the new or increased activity or service, in order to establish the extent of the harm caused by the Legislature's inadequate funding.

Reversed in part; special master's order of involuntary dismissal reinstated.

Justice CAVANAGH, concurring in part and dissenting in part, agreed that the school districts did not waive their POUM claim by accepting the conditional appropriation under MCL 388.1622b(1). He disagreed, however, that a plaintiff alleging the state's failure to adequately measure and appropriate sufficient funding for the purpose of complying with the POUM provision must plead and prove a quantified dollar amount of underfunding. There is a meaningful factual difference between a per se POUM claim (which involves a mandate that was not accompanied by any appropriation) and a POUM claim alleging underfunding. Assuming that the state proceeded in good-faith compliance with its Headlee Amendment obligation, the state would have contemplated whether the mandate required an appropriation before it enacted that mandate. If no funds were appropriated, the state would necessarily have determined that (1) the mandate would not constitute a new activity or service or an increase in the level of any activities or services, (2) local governments would not have necessary increased costs, and (3) any increased cost was not a necessary cost as defined by the Headlee Amendment's implementing provisions, MCL 21.235(1) and MCL 21.233(6). Conversely, if the state appropriated funding to meet its Headlee Amendment obligations, those considerations would generally not be at issue. Instead, the issue would be whether the state properly measured the appropriation. Under MCL 21.233(6), part of the Headlee implementing legislation, the appropriation must be measured by the net cost of an activity or service provided by a local unit of government, and the net cost is the actual cost to the state if the state were to provide the activity or service mandated as a state requirement. The majority erroneously bypassed the import of MCL 21.233(6). The pertinent difference between a per se POUM claim and a claim of underfunding is that the latter only involves an inquiry into the sufficiency of the appropriation. Because the appropriation is measured by the actual cost to the state if the state were to provide the new activity, the burden of showing that the Legislature's appropriation

accurately reflects the state's costs is properly placed on the state. Justice CAVANAGH would have held that to overcome the state's motion for summary disposition, a plaintiff must show that there is a genuine issue of material fact that the state underfunded the appropriation. The Court of Appeals correctly determined that plaintiffs stood ready to present some evidence that, if credible to the trier of fact, would have undermined the validity of the method the Legislature used to determine the amount of the appropriations at issue and would have shifted the burden of going forward with evidence to the state to present some evidence that the appropriations fully funded the state's obligation under the POUM provision. Justice CAVANAGH would have affirmed the judgment of the Court of Appeals and allowed this case to continue in proceedings before the special master.

©2014 State of Michigan

# Opinion

Chief Justice:      Justices:
Robert P. Young, Jr.   Michael F. Cavanagh
                       Stephen J. Markman
                       Mary Beth Kelly
                       Brian K. Zahra
                       Bridget M. McCormack
                       David F. Viviano

FILED December 22, 2014

S T A T E   O F   M I C H I G A N

SUPREME COURT

DANIEL ADAIR *et al.*,

Plaintiffs-Appellees,

v                                           No. 147794

STATE OF MICHIGAN, MICHIGAN
DEPARTMENT OF EDUCATION,
BUDGET DIRECTOR FOR THE STATE
OF MICHIGAN, TREASURER FOR THE
STATE OF MICHIGAN, and
SUPERINTENDENT OF
PUBLIC INSTRUCTION FOR THE STATE
OF MICHIGAN,

Defendants-Appellants.

BEFORE THE ENTIRE BENCH

YOUNG, C.J.

## I.  INTRODUCTION

This Court is yet again faced with a challenge to the Legislature's education-related funding appropriation for state-imposed mandates under the Headlee

Amendment.[1]  Plaintiffs are taxpayers and school districts seeking a declaratory judgment that the amount of funding appropriated by the Legislature to fund new and increased recordkeeping requirements is materially deficient.  Consistent with our construction of the Headlee Amendment and our court rules, we have required that plaintiffs bringing an action charging inadequate funding of a legislative mandate under the Headlee Amendment must allege and prove not only that the funding was insufficient, but the type and extent of the harm.  Today we make clear that this burden includes the requirement that the plaintiff show the specific amount of underfunding where the Legislature has made at least some appropriation of funds.

The special master applied this burden of proof and dismissed plaintiffs' claims when plaintiffs stated at trial that they would not provide proofs establishing the specific amount of underfunding.  The Court of Appeals reversed, requiring plaintiffs only to provide evidence that the methodology used by the Legislature to determine the amount of the appropriation was materially flawed, and remanded the case to the special master for further proceedings.  The Court of Appeals' standard is inconsistent with this Court's longstanding requirement that a plaintiff alleging inadequate funding must show the type and extent of the funding shortfall.

Plaintiffs were properly instructed regarding the burden of proof by the special master before trial and failed to offer proofs concerning the specific amount of the alleged shortfall.  Thus, we reverse the judgment of the Court of Appeals and enter a judgment in favor of defendants.

_____

[1] Const 1963, art 9, §§ 25 to 34.

2

II. FACTS AND PROCEDURAL HISTORY

A. HISTORY OF *ADAIR* LITIGATION AND LEGISLATIVE ACTION

The legislatively imposed mandates at issue require that school districts collect and report certain information regarding school district performance to the Center for Educational Performance and Information (CEPI).[2]  The CEPI was created through Executive Order 2000-9 and  2000 PA 297 and is entrusted to "[c]oordinate the collection of all data required by state and federal law from districts, intermediate districts, and postsecondary institutions"[3] and "provide information to school leaders, teachers, researchers, and the public," including "[r]esearch-ready data sets for researchers to perform research that advances this state's educational performance."[4]

Initially, the state did not make an appropriation to fund the CEPI mandate.  As a result, in 2000 plaintiffs commenced a Headlee Amendment action in the Court of Appeals.  In the first *Adair* case decided by this Court, we held that the *lack* of funding for CEPI reporting requirements presented a "colorable claim under Headlee" because the mandates "require[d] the districts to actively participate in maintaining data that the state requires for its own purposes," a requirement that had not existed before that time.[5]

---

[2] MCL 388.1752.

[3] MCL 388.1694a(1)(a).

[4] MCL 388.1694a(1)(d)(*iii*).

[5] See *Adair v Michigan*, 470 Mich 105, 129-130; 680 NW2d 386 (2004).  We held that the remaining claims of Headlee violations were barred by res judicata or release, or failed to implicate the Headlee Amendment.  See *id*. at 133.

After a few additional trips between this Court and the Court of Appeals, the case culminated in *Adair v Michigan* (*Adair I*).[6]  In *Adair I*, this Court affirmed the Court of Appeals' declaratory judgment that the Legislature had violated the prohibition of unfunded mandates (POUM) provision of the Headlee Amendment.  We held that, in a case in which the state provides *no funding at all* to fund a mandate, a POUM Headlee claim does not require proof by a plaintiff of specific increased costs necessitated by the state mandate.  In that situation, "a plaintiff need only establish that the state imposed on it a new or increased level of activity without providing any funding to pay for it."[7]

In response to *Adair I*, the Legislature enacted MCL 388.1752a,[8] which appropriated about $25 million for the 2010-2011 school year to reimburse local school districts for the cost of the CEPI recordkeeping mandate.[9]  The Legislature also added an

---

[6] *Adair v Michigan*, 486 Mich 468; 785 NW2d 119 (2010) (*Adair I*).  See also *Adair v Michigan (On Remand)*, 267 Mich App 583; 705 NW2d 541 (2005); *Adair v Michigan (After Remand)*, 474 Mich 1073 (2006); *Adair v Michigan (On Second Remand)*, 279 Mich App 507; 760 NW2d 544 (2008).

[7] *Adair I*, 486 Mich at 486-487.  That litigation ended in 2013 when this Court remanded, for a final time, on an issue concerning attorney fees.  *Adair v Michigan*, 298 Mich App 383; 827 NW2d 740 (2012), rev'd 494 Mich 852 (2013).  *Adair v Michigan (On Fourth Remand)*, 301 Mich App 547; 836 NW2d 742 (2013), lv den 495 Mich 914 (2013).

[8] See 2010 PA 217.

[9] This statute, which has been amended yearly, currently reads in part:

> As required by the court in the consolidated cases known as Adair v State of Michigan, Michigan supreme court docket nos. 137424 and 137453, from the state school aid fund money appropriated in [MCL 388.1611] there is allocated for  2014-2015 an amount not to exceed $38,000,500.00 to be used solely for the purpose of paying necessary costs related to the state-mandated collection, maintenance, and reporting of data to this state.  [MCL 388.1752a(1), as amended by 2014 PA 196.]

additional CEPI mandate, the teacher-student data link (TSDL), which requires reporting of data to allow districts "to assess individual teacher impact on student performance."[10] So, for the 2010-2011 school year, the Legislature made a separate appropriation in the amount of $8.4 million for the newly created TSDL mandate.[11] For the following school year, 2011-2012, the Legislature appropriated approximately $34 million to cover all of the CEPI record keeping requirements, which included money for the TSDL requirements (the "§ 152a appropriation").[12] Additionally, for both of these school years, the Legislature made a "discretionary nonmandated payment" (the "§ 22b appropriation").[13] However, these funds were conditioned on furnishing the data as required by the CEPI mandates. The condition currently reads as follows:

> In order to receive an allocation under subsection (1), each district shall do all of the following:
>
> * * *
>
> (c) Furnish data and other information required by state and federal law to the center and the department in the form and manner specified by the center or the department, as applicable.[14]

---

[10] MCL 388.1694a(1)(d)(*i*), as amended by 2010 PA 204 ("Data shall include . . . [d]ata sets that link teachers to student information, allowing districts to assess individual teacher impact on student performance and consider student growth factors in teacher and principal evaluation systems."). This mandate was imposed after *Adair I*.

[11] See MCL 388.1694a(9), as amended by 2010 PA 204.

[12] See MCL 388.1752a, as amended by 2011 PA 62.

[13] See MCL 388.1622b(1), as amended by 2011 PA 62.

[14] MCL 388.1622b(3)(c), as amended by 2014 PA 196.

5

Plaintiffs, more than 450 Michigan school districts together with one individual taxpayer from each district filed an original action in the Court of Appeals[15] challenging the amount of the § 152a appropriation for school year 2010-2011 as inadequate to compensate the school districts for the CEPI requirements. Plaintiffs amended their pleadings to include a similar challenge to the following school year's appropriation.[16]

The Court of Appeals assigned the case to a special master. After discovery, defendants moved for summary disposition under MCR 2.116(C)(10),[17] claiming that plaintiffs could not produce any evidence of the amount of necessary increased costs and that in any case, the § 22b appropriation fully funded the mandates. The master denied defendants' motion, finding that plaintiffs had presented "more than sufficient evidence to show that the state has underfunded the CEPI mandates . . . [and] the [TSDL] mandate." He also ruled that

> [p]laintiffs have a 'higher burden' which requires them to produce evidence
> of specific dollar-amount increases in the costs incurred in order to comply
> with the CEPI requirements. [*Adair I*, 486 Mich at 480] n 29 . . . . The

---

[15] Const 1963, art 9, § 32 provides that claims under the Headlee Amendment are brought as an original action in the Court of Appeals.

[16] Plaintiffs made two additional claims: (1) that changes to the teachers' tenure act requiring annual teacher and administrator evaluations constitute Headlee violations; and (2) the manner of funding of the new mandates was unconstitutional because it unconstitutionally reduced per pupil funding. We denied plaintiffs' cross-application for leave to appeal which sought review of those issues. *Adair v Michigan*, 495 Mich 937, 938 (2014).

[17] MCR 2.116(C)(10) provides that the following is a ground for summary disposition: "Except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."

> Plaintiffs' poignant argument that the general direction of *Adair I* mitigates requiring them to establish the insufficiency of the amount of appropriation overlooks the factual distinction between *Adair I* (no appropriation made) and this case (appropriations made).

At that point, the master believed that "[o]nce the state establishes an appropriation, the Plaintiffs are equipped to attack whether the amount is sufficient. Indeed, the Plaintiffs' expert has done just that."

The case proceeded to trial, but during opening statements, plaintiffs' counsel stated that they would not attempt to prove a specific dollar amount of underfunding, but rather intended to show through expert testimony that the Legislature's methodology to determine the requisite amount of funding was materially flawed and thus that the appropriation could not be constitutionally adequate under Headlee. At the close of plaintiffs' opening statement, on the basis of plaintiffs' refusal to present proofs on the specific amount of alleged funding shortfall, defendants filed a motion for an involuntary dismissal,[18] claiming that plaintiffs were unable or unwilling to meet their burden. Plaintiffs responded that, because this was merely a declaratory action, they need not quantify the extent of the underfunding, but only show that an underfunding occurred. The special master granted defendants' motion. In a written opinion, the master

---

[18] The special master referred to the motion as one for "directed verdict and/or involuntary dismissal," and the Court of Appeals referred to the motion as one for directed verdict, though the appropriate label is one for involuntary dismissal because it is a case without a jury. See MCR 2.504(B)(2) (providing that dismissal may be granted "[i]n an action, claim, or hearing tried without a jury . . . on the ground that, on the facts and the law, the plaintiff has no right to relief"); *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995) (treating the defendants' motion for a "directed verdict" as one for involuntary dismissal because the trial court was sitting as the finder of fact).

7

reiterated that plaintiffs had the burden to establish the specific amount of underfunding. Because plaintiffs declined to offer those proofs, their case was dismissed.

Both parties filed objections, and the Court of Appeals reversed the special master's ruling on the appropriate burden of proof, but affirmed in all other respects.[19] The panel concluded that the special master had relied too heavily on the fact that *Adair I* involved no legislative funding while this case involves a claim for underfunding. In the Court of Appeals' view, *Adair I* stood for the proposition that neither Const 1963, art 9, § 29 nor MCL 21.233 required plaintiffs to prove how much their districts' costs had increased as a result of a new or increased mandate.

Instead, stated the panel, plaintiffs had the "burden to present sufficient evidence to allow the trier of fact to conclude that the method employed by the Legislature to determine the amount of the appropriation was so flawed that it failed to reflect the actual cost to the state if the state were to provide the activity or service mandated as a state requirement . . . ."[20] The Court of Appeals concluded that plaintiffs stood ready to meet this burden through expert testimony, which a trier of fact could find "undermined the validity of the method used by the Legislature to determine the amount of the appropriations at issue . . . ."[21] The panel remanded to the special master to reopen the proofs.

_____

[19] *Adair v Michigan*, 302 Mich App 305, 308; 839 NW2d 681 (2013).

[20] *Id*. at 316, quoting MCL 21.233(6) (quotation marks omitted).

[21] *Adair*, 302 Mich App at 316-317.

8

Both parties sought leave to appeal in this Court; we granted defendants' application for leave to appeal.[22]

## III.  STANDARD OF REVIEW

Questions of constitutional and statutory interpretation are reviewed de novo.[23] An appellate court reviews de novo a trial court's ruling on a motion for an involuntary dismissal.[24]

## IV.  ANALYSIS

Because we are interpreting the Michigan Constitution, the proper focus is on the will of the people ratifying the amendment.  "The primary objective in interpreting a constitutional provision is to determine the text's original meaning to the ratifiers, the people, at the time of ratification."[25]  This is the rule of "common understanding," which is described by Justice Cooley as follows:

> A constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the

---

[22] *Adair*, 495 Mich 937.  We directed the parties to brief

> (1) which party has the burden of proving underfunding of a legislative mandate in a challenge under Const 1963, art 9, § 29, (2) what elements of proof are necessary to sustain such a claim, and (3) whether acceptance of a general appropriation from the Legislature which is specifically conditioned on compliance with reporting requirements pursuant to MCL 388.1622b([3])(c) waives any challenge to the funding level for those requirements under Const 1963, art 9, § 29.  [*Id*. at 937-938.]

[23] *Makowski v Governor*, 495 Mich 465, 470; 852 NW2d 61 (2014).

[24] *Samuel D Begola*, 210 Mich App at 639.

[25] *Wayne Co v Hathcock*, 471 Mich 445, 468; 684 NW2d 765 (2004).

great mass of the people themselves, would give it. For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed.[26]

This Court locates the common understanding of constitutional text by applying the plain meaning of the text at the time of ratification.[27] Interpretation of a constitutional provision also takes account of "the circumstances leading to the adoption of the provision and the purpose sought to be accomplished."[28]

A. THE HEADLEE AMENDMENT AND IMPLEMENTING LEGISLATION

In 1978, the voters passed the Headlee Amendment by initiative. The Headlee Amendment was adopted with "the primary purpose of relieving the electorate from overwhelming and overreaching taxation."[29] To effectuate its purpose, the amendment set forth "a fairly complex system of revenue and tax limits."[30] One of these limitations is contained in Const 1963, art 9, § 25, which provides, "The state is prohibited from requiring any new or expanded activities by local governments without full state financing, from reducing the proportion of state spending in the form of aid to local governments, or from shifting the tax burden to local government."

---

[26] *Id*. at 468, quoting Cooley, Constitutional Limitations, p 81.

[27] *Hathcock*, 471 Mich at 468-469.

[28] *People v Tanner*, 496 Mich 199, 226; 853 NW2d 653 (2014) (citation omitted).

[29] *Durant v Michigan*, 456 Mich 175, 214; 566 NW2d 272 (1997).

[30] *Id*. at 182.

The Headlee Amendment provides for another set of limitations in article 9, § 29. The first sentence of that section provides:

> The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law.

The second sentence of § 29 provides:

> A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs.

The first sentence prohibits the state from reducing the state-financed proportion of an existing activity required of local governments; the second generally prohibits new mandates which increase the burden on local governments unless accompanied by funding to offset increased costs. Claims under the first sentence are referred to as "maintenance of support" or "MOS" claims. Claims under the latter sentence are referred to "prohibition of unfunded mandates" or "POUM" claims. This appeal involves a POUM claim: the plaintiffs contend that the state failed to provide adequate funding for increased services under the CEPI mandates.

Shortly after the Headlee Amendment was enacted, the Legislature passed an act to implement the constitutional provisions.[31] The act requires the Legislature to "annually appropriate an amount sufficient to make disbursements to each local unit of

---

[31] 1979 PA 101, codified at MCL 21.231 *et seq*. The Legislature was required to implement the provisions of the Headlee Amendment by Const 1963, art 9, § 34.

11

government for the necessary cost of each state requirement . . . ."[32]  "Necessary cost" means "the net cost of an activity or service provided by a local unit of government."[33] "Net cost," in turn, is defined as "the actual cost to the state if the state were to provide the activity or service mandated as a state requirement, unless otherwise determined by the legislature when making a state requirement."[34]

## B.  ACCEPTANCE OF GENERAL APPROPRIATION AS WAIVER

As an initial matter, defendants contend that plaintiff school districts' acceptance of the "discretionary nonmandated payment"—the § 22b appropriation—constitutes a waiver of any claim that the Legislature has failed to fulfill its Headlee obligations. Because acceptance of the appropriation is conditioned on compliance with the CEPI mandates, defendants contend that such acceptance thereby waives any claim of a constitutional deficiency under the Headlee Amendment. "Waiver is the intentional relinquishment of a known right."[35]  The condition in MCL 388.1622b reads:

> (3) In order to receive an allocation under subsection (1), each district shall do all of the following:
>
> *   *   *
>
> (c) Furnish data and other information required by state and federal law to [CEPI] and the department in the form and manner specified by [CEPI] or the department, as applicable.

---

[32] MCL 21.235(1).

[33] MCL 21.233(6).

[34] *Id.*  "Necessary cost" does not include a cost that does not exceed a *de minimis* amount, defined as a cost not exceeding $300 per claim.  MCL 21.233(6)(c); MCL 21.232(4).

[35] See *Bailey v Jones*, 243 Mich 159, 162; 219 NW 629 (1928).

The proper interpretation of a statute is rendered by reference to its plain language.[36] Examining the language, one searches in vain to find any notice that, by accepting the § 22b appropriation, plaintiffs have thereby relinquished their right to bring a constitutional challenge to the adequacy of funding provided by the Legislature. Indeed, all the § 22b appropriation requires is that the district comply with the statute's reporting mandates—to "furnish data and other information required by state and federal law to the center and the department"—in exchange for the allocation. The districts are bound to the terms of the condition upon acceptance of the appropriation, but the terms do not include a waiver of any Headlee claim.[37] The only thing the plaintiffs

---

[36] *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 438-39; 716 NW2d 247 (2006) ("The primary goal of statutory interpretation is to give effect to the Legislature's intent. The first step is to review the statute's language. And if the statute is plain and unambiguous, then this Court will apply the statute as written.") (citations omitted).

[37] Not only is no explicit Headlee waiver required, the language of § 22b suggests that the Legislature understood that there was no waiver of Headlee claims. In that very section, MCL 388.1622b(7) specifically contemplates potential Headlee claims by school districts against the state by setting up a procedure for reimbursing the districts in the event of a successful claim. The inclusion of this provision belies the defendants' argument that acceptance of the appropriation waives any Headlee claim. MCL 388.1622b(7) provides:

> It is the intent of the legislature that all constitutional obligations of this state have been fully funded . . . . If a claim is made by an entity receiving funds under this article that challenges the legislative determination of the adequacy of this funding or alleges that there exists an unfunded constitutional requirement, the state budget director may escrow or allocate from the discretionary funds for nonmandated payments under this section the amount as may be necessary to satisfy the claim before making any payments to districts . . . .

Moreover, even though the condition does not have the effect the defendants contend it does, it still serves a purpose. It serves as an enforcement mechanism to ensure a district's compliance with the mandate without requiring the state to bring a suit for declaratory or injunctive relief to do so.

intentionally and voluntarily waived upon acceptance of these funds was the ability to ignore the condition requiring them to furnish data and information as required by the CEPI mandates.

## C. APPROPRIATE BURDEN OF PROOF

This Court has considered Headlee claims arising under both the MOS and POUM sentences of § 29 and has consistently announced that a plaintiff making either claim under the Headlee Amendment must show the type and extent of the alleged shortfall in order to prove its case. In *Oakland Co v Michigan*,[38] we considered whether, under the Headlee Amendment's MOS provision, the state unconstitutionally reduced the ratio of financing for county foster care services. In remanding to the lower court for further proceedings, Justice MARILYN KELLY's plurality opinion stated that "plaintiffs must allege the type and *extent of the harm* so that the court may determine if a § 29 violation occurred for purposes of making a declaratory judgment. In that way, the state will be aware of the financial adjustment necessary to allow for future compliance."[39] The Court adopted this plurality position in the majority opinion of the 2004 *Adair* case, which concerned a POUM claim.[40] Thus, the Court has announced this standard as applicable to both of the sentences in § 29 of the Headlee Amendment, and has done so when the plaintiffs have requested only declaratory relief.

---

[38] *Oakland Co v Michigan*, 456 Mich 144; 566 NW2d 616 (1997).

[39] *Id*. at 166 (MARILYN KELLY, J., plurality opinion) (emphasis added).

[40] *Adair*, 470 Mich at 119-120, quoting *Oakland Co*, 456 Mich at 166 (MARILYN KELLY, J., plurality opinion) (emphasis added).

In 2007, the Michigan Court Rules were amended in order to clarify that a plaintiff bringing a Headlee claim must plead "with particularity the factual basis for the alleged violation . . . ."[41] In an action involving § 29, "the plaintiff shall state with particularity the type and extent of the harm and whether there has been a violation of either the first or second sentence of that section."[42]

While the requirement that a plaintiff must allege and prove the type and extent of the harm had been articulated consistently, this Court recognized a narrow exception in *Adair I*. In that case, we held that, when the state failed to make *any* appropriation to fund an increased level of activity or service mandated by the state, the plaintiff need not establish the particular amount of increased costs.[43] Instead, if a plaintiff proves that the state required a new or increased level of activity or service without providing any funding, the burden shifts to the state "to demonstrate that no state funding was required because the requirement did not actually increase costs or the increased costs were not necessary."[44]

This exception, however, is explained by the distinct factual scenario facing the Court in that case. We have recognized on multiple occasions that POUM claims are in some respects similar to MOS claims.[45] Significantly, MOS claims and POUM claims

---

[41] MCR 2.112(M).

[42] *Id*. Moreover, in a POUM action, "the plaintiff shall state with particularity the activity or service involved." *Id*.

[43] *Adair I*, 486 Mich at 480.

[44] *Id*.

[45] See *Adair*, 470 Mich at 120 n 13; *Judicial Attorneys Ass'n v Michigan*, 460 Mich 590,

15

concerning an alleged underfunding are quite similar. Both types of claims require a close look at the Legislature's appropriation in comparison with the mandate in order to evaluate whether the appropriation is sufficient to meet Headlee obligations. This calculus is qualitatively different from a POUM claim in which the Legislature failed to appropriate any funding at all. While the former involves at least some appropriation that the Legislature can argue is sufficient to meet its Headlee obligations, the latter involves the complete absence of funding. A POUM claim alleging no funding is a simpler claim to make, as explained in *Adair I*, because the Legislature can be said to have completely abdicated its funding duty; all that needs to be shown is that the mandate required some increased level of activity or service.[46] This characteristic—the absolute lack of funding—separates *Adair I* from *Oakland Co* and the 2004 *Adair* case. Thus, *Adair I* is appropriately limited to situations in which the Legislature has not made any appropriation to cover the cost of a new or increased mandate and is inapplicable to § 29 claims in which some funding has been appropriated.[47]

Consistent with prior caselaw and our court rules, we hold that a plaintiff must allege and prove the specific amount of the purported funding shortfall in order to

---

598 n 2; 597 NW2d 113 (1999) (stating that the two sentences must be read together because they were aimed at the alleviation of two possible manifestations of the same voter concern), quoting *Schmidt v Dep't of Ed*, 441 Mich 236, 250-251; 490 NW2d 584 (1992).

[46] See *Adair I*, 486 Mich at 483-485.

[47] Indeed, even in *Adair I*, we noted that a "higher burden" would likely apply in POUM cases such as this, where "the state *did* appropriate funds for the new activity or service." *Id*. at 480 n 29 (emphasis added).

16

establish the "extent of the harm" caused by the Legislature's inadequate funding.[48]  In

other words, to sustain a claim under the Headlee Amendment when the Legislature

appropriated at least some amount of funding to cover the cost of a new or expanded

mandate, a plaintiff must allege and prove the extent of the "necessary increased cost" of

the new or increased activity or service.[49]

Requiring a plaintiff to establish the specific amount of a funding is consistent

with the Constitution and reduces litigation gamesmanship.  By requiring a plaintiff to

prove the extent of the underfunding, "the state will be aware of the financial adjustment

necessary to allow for future compliance."[50]  In other words, if a plaintiff carries its

---

[48] Defendants argue that plaintiffs should be held to a heightened "clear and convincing evidence" standard, relying on *46th Circuit Trial Court v Crawford Co*, 476 Mich 131, 149; 719 NW2d 553 (2006).  That case, however, concerned the narrow situation in which a court seeks to exercise its "inherent power" to compel counties to provide funding where the trial court serving those counties "has not received sufficient funding to operate at a serviceable level."  *Id*. at 160 (opinion by MARKMAN, J.).  This standard was appropriate when, as in *46th Trial Court*, separation of powers concerns warranted that the judiciary respect the coordinate powers of the other branches.  That heightened evidentiary standard has never been applied in our Headlee jurisprudence, and we decline to do so today.

[49] Const 1963, art 9, § 29.  There remains an issue whether the definition of "net cost" in the Headlee implementing legislation, MCL 21.233(6), which focuses on the cost *to the state*, is consistent with Const 1963, art 9, § 29, which focuses the cost *to the local unit of government*.  There is an apparent tension between the Constitution and the statute concerning the appropriate measure of cost.  Members of this Court have noted this tension before, see *Adair I*, 486 Mich at 506 n 17 (MARKMAN, J., dissenting), but because the issue was not raised by either party, we decline today to address it.  *Williams v Hofley Mfg Co*, 430 Mich 603, 605 n 1; 424 NW2d 278 (1988) (refusing to consider a constitutional issue that, as here, "was not raised, preserved, or briefed by the parties").  As plaintiffs declined to show any specific dollar amount of cost before the special master, it is also not necessary to address the appropriate measure of cost today.

[50] *Adair*, 470 Mich at 119-120, quoting *Oakland Co*, 456 Mich at 166 (MARILYN KELLY,

---

17

burden, the Legislature will have a judicially determined amount that it must appropriate in order to comply with Headlee. If a plaintiff were required only to show flaws in the methodology by which the appropriation was determined, further determination of the precise cost would be needed, thus further delaying "full state financing" to the localities guaranteed by our Constitution.[51] The burden of showing the specific amount of funding shortfall is not only consistent with the language of the Headlee Amendment but avoids needless litigation.

## D. APPLICATION

Before trial, the special master properly made clear that "[p]laintiffs have a 'higher burden' which requires them to produce evidence of specific dollar-amount increases in the costs incurred in order to comply with the CEPI requirements." Nonetheless, during their opening statement, plaintiffs disclaimed any obligation to prove a specific dollar amount of damages, stated that they would not attempt such proofs, and asserted that they intended to prove only that the Legislature's methodology for determining the amount of funding for the mandates at issue was flawed. Plaintiffs contended that they would carry their preferred burden by presenting expert testimony. Plaintiffs' expert report concluded that the state's appropriation was materially lacking because the determinations made by the state were inadequate and incomplete. While the report extensively documented the alleged problems with the Legislature's methodology in calculating the § 152a appropriation, the report failed to offer any evaluation of the extent of the shortfall.

J., plurality opinion).

[51] Const 1963, art 9, § 25.

18

Plaintiffs did not offer, nor did they intend to offer, proofs sufficient to create an issue of fact regarding whether they could carry their burden. Accordingly, we reverse the Court of Appeals' ruling and reinstate the special master's involuntary dismissal in favor of defendants because plaintiffs failed to offer facts that would entitle them to relief.[52]

Because our precedents as well as our court rules make clear that a plaintiff must allege and prove with specificity the extent of the harm incurred as a result of a legislative funding shortfall, we decline to remand the case for further proceedings. The special master put the plaintiffs on notice before trial that they bore the burden of establishing the specific amount of increased costs. Even though plaintiffs were apprised of their burden, they declined to prepare or offer proofs that would at least create an issue of fact regarding the extent of underfunding.[53]

---

[52] See MCR 2.504(B)(2).

[53] As noted, the special master ruled in his opinion and order regarding defendants' motion for summary disposition that "[p]laintiffs have a 'higher burden' which requires them to produce evidence of specific dollar-amount increases in the costs incurred in order to comply with the CEPI requirements." Despite this ruling, plaintiffs maintained during their opening statement that "we do not have the burden to prove specific dollar damages accrued." Defendants promptly moved for dismissal, observing that plaintiffs were apparently unwilling or unable to abide by the special master's ruling. Plaintiffs responded that the substance of the special master's ruling was that their expert report constituted "more than sufficient evidence to show that the state has [underfunded] the CEPI mandate," so that they had no burden beyond this to show a specific dollar amount of damages.

We see no basis for plaintiffs' position. The special master's opinion and order stated that the expert report constituted " 'independent evidence' of a genuine factual dispute because, viewed most favorably to the [p]laintiffs, it rebuts the [d]efendants' argument that the [p]laintiffs have 'refused to satisfy their burden of proof that the legislative appropriation is insufficient to pay their necessary increase[d] costs.' " That is, the special master only rejected defendants' argument that plaintiffs failed to show that the legislative appropriation was "insufficient." This rejection was consistent with his

19

## V. CONCLUSION

We reaffirm and hold that a plaintiff claiming that the Legislature's appropriation failed to fully fund the cost of a new or increased service or activity must allege and prove the specific amount of the shortfall. Plaintiffs failed to offer any proofs that could entitle them to relief. Thus, we reverse the judgment of the Court of Appeals in part and reinstate the special master's order of involuntary dismissal.[54]

>                     Robert P. Young, Jr.
>                     Stephen J. Markman
>                     Mary Beth Kelly
>                     Brian K. Zahra
>                     Bridget M. McCormack
>                     David F. Viviano

---

ruling that plaintiffs would be required to show a specific dollar amount at trial. Given that plaintiffs declined to offer proofs in accordance with the special master's ruling, we now conclude that further proceedings are unwarranted.

[54] We do not disturb the balance of the Court of Appeals' holdings not addressed in this opinion.

DANIEL ADAIR *et al.*,

      Plaintiffs-Appellees,

v                                  No. 147794

STATE OF MICHIGAN, MICHIGAN
DEPARTMENT OF EDUCATION,
BUDGET DIRECTOR FOR THE STATE
OF MICHIGAN, TREASURER FOR THE
STATE OF MICHIGAN, and
SUPERINTENDENT OF
PUBLIC INSTRUCTION FOR THE STATE
OF MICHIGAN,

      Defendants-Appellants.

_____

CAVANAGH, J. (*concurring in part and dissenting in part*).

There are generally two issues implicated in this appeal. First, we asked the parties to address "which party has the burden of proving underfunding of a legislative mandate in a challenge under Const 1963, art 9, § 29" and the elements of such a claim. *Adair v Michigan*, 495 Mich 937, 937-938 (2014). This first issue involves a plaintiff's burden of proof in showing that the state underfunded "[a] new activity or service or an increase in the level of any activity or service beyond that required by existing law" for the purposes of the second provision of the Headlee Amendment, commonly referred to as a "prohibition on unfunded mandates" or "POUM" claim. Const 1963, art 9, § 29;

*Adair v Michigan*, 486 Mich 468, 478; 785 NW2d 119 (2010) (*Adair I*).[1]  In addition, we asked the parties to address "whether acceptance of a general appropriation from the Legislature which is specifically conditioned on compliance with reporting requirements pursuant to MCL 388.1622b([3])(c) waives any challenge to the funding level for those requirements under Const 1963, art 9, § 29." *Adair*, 495 Mich at 938.[2]

With respect to this second issue, I agree with the majority's conclusion that plaintiff school districts did not waive their POUM claim by accepting the conditional appropriation under MCL 388.1622b (§ 22b).  As the majority explains, nothing on the

_____

[1] In full, Const 1963, art 9, § 29 states:

> The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law.  A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs.  The provision of this section shall not apply to costs incurred pursuant to Article VI, Section 18.

As the majority notes, the first sentence of the Headlee Amendment is described as the "maintenance of support" ("MOS") provision.  *Adair I*, 486 Mich at 478.  As in *Adair I*, "[o]nly the POUM provision is at issue in this case." *Id*.

[2] MCL 388.1622b states in relevant part:

> (3) In order to receive an allocation under subsection (1), each district shall do all of the following:

> * * *

> (c) Furnish data and other information required by state and federal law to the center and the department in the form and manner specified by the center or the department, as applicable.

2

face of § 22b would lead plaintiffs to believe that accepting the funds would result in a waiver of a Headlee Amendment claim, and thus, plaintiffs did not intentionally relinquish a known right. See *Sweebe v Sweebe*, 474 Mich 151, 156-157; 712 NW2d 708 (2006) (citations omitted). Moreover, in *Adair v Michigan* (*On Second Remand*), 279 Mich App 507, 523-524; 760 NW2d 544 (2008), aff'd in part and rev'd in part by *Adair I*, 486 Mich 468, the Court of Appeals addressed a similar issue regarding a general appropriation under § 22b, holding that "the POUM clause reflects the intent of the voters that the Legislature *actually determine* the necessary costs associated with the implementation of new legislative mandates and then appropriate that amount for the *express purpose* of funding the new mandate." (Emphasis added.) Accordingly, I agree with the majority's rejection of defendants' argument that accepting the conditional § 22b appropriation waived plaintiffs' Headlee Amendment claim.

My agreement with the majority ends there, however. Specifically, with respect to the first issue, I dissent from the majority's holding that a plaintiff alleging that the state failed to adequately measure and appropriate sufficient funding for the purposes of complying with the POUM provision must bear the burden to plead and prove a quantified dollar amount of underfunding. As explained below, in deciding a POUM plaintiff's burden to show that the state failed to fully fund a new activity or service or an increase in the level of any activity or service, my aim is to recognize the dissimilarities of a per se and underfunding claim while remaining consistent with *Adair I*'s underlying principles. See Const 1963, art 9, § 29; MCL 21.233(6).

To begin, not unlike the majority, I think that there is a meaningful factual difference between a per se POUM claim, i.e., a mandate that was *not* accompanied by

3

any appropriation, see *Adair I*, 486 Mich at 479 n 29, and a POUM claim alleging underfunding. In *Adair I*, which involved a per se POUM claim, we held that

> to establish a violation of the POUM provision, a plaintiff must show that the state required a new activity or service or an increase in the level of activities or services. If no state appropriation was made to cover the increased burden on local government, the plaintiff need not show the amount of increased costs. It is then the state's burden to demonstrate that no state funding was required because the requirement did not actually increase costs or the increased costs were not necessary. [*Id*. at 480.[3]]

Assuming that the state proceeded in good-faith compliance with its Headlee Amendment obligation, the state would have contemplated whether the mandate required an appropriation *before* it enacted the mandate at issue. See, generally, MCL 21.235(2). Specifically, if no funds were appropriated, the state would have necessarily determined that (1) the mandate would not constitute "a new activity or service or an increase in the level of any activities or services," Const 1963, art 9, § 29; (2) local governments would not have "necessary increased costs," *id*.; and (3) any increased cost was not a "necessary cost," as defined by the Headlee Amendment's implementing provisions, MCL 21.235(1) and MCL 21.233(6).[4] Our standard regarding a POUM plaintiff's burden alleging a per

---

[3] Notably, in *Adair I*, we expressly left unanswered the issue of a POUM plaintiff's burden when it is alleged that an appropriation was underfunded. See *Adair I*, 486 Mich at 479 n 28.

[4] MCL 21.235(1) states, "The legislature shall annually appropriate an amount sufficient to make disbursements to each local unit of government for the necessary cost of each state requirement pursuant to this act, if not otherwise excluded by this act."

MCL 21.233(6) states in relevant part:

> "Necessary cost" means the net cost of an activity or service provided by a local unit of government. The net cost shall be the actual cost to the state if the state were to provide the activity or service mandated

4

se violation established in *Adair I* reflects the fact that such a claim may involve disputes on one or more of those issues.

Conversely, when the state decides to appropriate funding in conjunction with the mandate for the express purpose of meeting its Headlee Amendment obligation, it is unlikely that any of the above considerations would be at issue. Instead, as plaintiffs assert in this case, the issue becomes whether the state properly measured the appropriation. For the purposes of that inquiry, the Legislature, pursuant to the constitutional directive to enact implementing legislation, see Const 1963, art 9, § 34, has instructed that the appropriation be measured by "the net cost of an activity or service provided by a local unit of government," and the "net cost" "shall be the actual cost to the state if the state were to provide the activity or service mandated as a state

---

as a state requirement, unless otherwise determined by the legislature when making a state requirement. Necessary cost does not include the cost of a state requirement if the state requirement satisfies 1 or more of the following conditions:

(a) The state requirement cost does not exceed a de minimus [sic] cost.

(b) The state requirement will result in an offsetting savings to an extent that, if the duties of a local unit which existed before the effective date of the state requirement are considered, the requirement will not exceed a de minimus [sic] cost.

(c) The state requirement imposes additional duties on a local unit of government which can be performed by that local unit of government at a cost not to exceed a de minimus [sic] cost.

In turn, "[d]e minimus [sic] cost" is defined by MCL 21.232(4), which states, " 'De minimus [sic] cost' means a net cost to a local unit of government resulting from a state requirement which does not exceed $300.00 per claim."

5

requirement . . . ." MCL 21.233(6). This is consistent with this Court's previous recognition that the statute's reference to "actual cost to the state" *is* the proper measure of the appropriation. See *Adair I*, 486 Mich at 488-489; *Durant v Michigan*, 424 Mich 364, 390-391; 381 NW2d 662 (1985).

In my view, the majority erroneously bypasses the import of MCL 21.233(6) on the basis that the parties in this case did not address the "apparent tension" between (1) the POUM provision's statement that the appropriation should be made "to pay the unit of Local Government for any necessary increased costs" and (2) the appropriation's measure as the "actual cost to the state" under MCL 21.233(6).[5] "The legislature has power to adopt a statute, except as it is prohibited by the Constitution; and a statute will not be declared in conflict with the Constitution while serious doubt exists as to such conflict." *Gratiot Co v Federspiel*, 312 Mich 128, 132; 20 NW2d 131 (1945) (citations omitted). I have "serious doubt" whether there is such a conflict in this case, and therefore, in my opinion, the Legislature's explicit measure of the appropriation under

[5] To the extent that the majority is correct that the effect of MCL 21.233(6) on the issue currently before this Court is not preserved, "the preservation requirement is not an inflexible rule; it yields to the necessity of considering additional issues when necessary to a proper determination of a case." *Klooster v Charlevoix*, 488 Mich 289, 310; 795 NW2d 578 (2011) (citations and quotation marks omitted). Moreover, the majority's treatment of the "apparent tension" between the POUM provision and MCL 21.233(6) is similar to the *Adair I* dissent. See *Adair I*, 486 Mich at 506 n 17 (MARKMAN, J., dissenting) (explaining that the arguable conflict between the POUM provision and MCL 21.233(6) was not raised by the parties in that appeal, and thus, declined to address the issue fully). Avoiding this issue in *Adair I* when this Court was not considering the sufficiency of funds that were actually appropriated might have been tenable because no appropriation had been made, but for the reasons stated within, I think that it must be addressed in this case.

6

MCL 21.233(6) is a valid and indispensible consideration in properly addressing a POUM plaintiff's burden to sustain a claim of underfunding.

To elaborate, under Const 1963, art 9, § 29, the POUM provision requires that local governments have projected or incurred "necessary increased costs" resulting from the mandate. See *Adair I*, 486 Mich at 483-485. The implementing legislation then requires that the local governments' costs be increased beyond a *de minimis* amount before an appropriation is required. MCL 21.233(6) and MCL 21.232(4). That system is sensible because if the local governments' "necessary increased costs" are not increased beyond a *de minimis* amount, to otherwise require an appropriation would create a windfall for local governments.[6] Stated differently, there is no need for funding if it would merely cost local governments, at most, a *de minimis* amount to implement the mandate. If, however, local governments' costs will increase beyond a *de minimis* amount as a result from the mandate, an appropriation is required, but it is not measured by the dollar amount of the local governments' costs to implement the mandate. Instead, MCL 21.233(6) requires that the appropriation be measured by the state's costs if it were to perform the activity or service, which is consistent with the Headlee Amendment's purpose—i.e., that the state cannot shift its costs to local governments to perform what the state would like to see implemented.[7] In sum, using the state's costs as the measure

---

[6] See *Adair I*, 486 Mich at 477 ("When interpreting constitutional provisions, we are mindful that the interpretation given the provision should be the sense most obvious to the common understanding and one that reasonable minds, the great mass of the people themselves, would give it.") (citations and quotation marks omitted).

[7] See *Durant*, 424 Mich at 391 ("Providing only the actual cost to the state, if it provided the service, is in keeping with the voters' desire that there be no shift of responsibility for

---

of the appropriation ensures that the state does not unconstitutionally increase local tax burdens because it provides local governments with the money that the state is saving by not implementing the mandate itself. But the POUM provision does not require that the state make an appropriation to local governments if the mandate will not increase the local governments' necessary costs beyond a *de minimis* amount.

Additionally, I disagree with a key premise and strong implication on which the majority relies: that *Adair I* in its entirety merely stands for a "narrow exception" to a longstanding general rule regarding a POUM plaintiff's burden. Rather, I agree with the unanimous Court of Appeals opinion below that there are relevant general principles underlying *Adair I*'s analysis of the Headlee Amendment. See *Adair v Michigan*, 302 Mich App 305, 314-315; 839 NW2d 680 (2013).

Specifically, addressing whether the mandates resulted in increased costs to plaintiff school districts, *Adair I* relied on the language of the Headlee Amendment and MCL 21.233(6), which undoubtedly remains applicable regardless of whether a per se or underfunded POUM claim is at issue. We held that evidence of a "diversion of manpower . . . constituted increased costs to the districts." *Adair I*, 486 Mich at 483-484. And by juxtaposing the reference to "*actual* cost to the state" under MCL 21.233(6)[8] to the language of the Headlee Amendment, we concluded that "[t]he Headlee Amendment does not require the district to show that its *actual* expenditures increased." *Adair I*, 486

services from the state to the local governments without adequate compensation.").

[8] Emphasis added.

Mich at 484 n 32 (emphasis added). Further, when discussing the implementing statute, *Adair I* stated:

> Neither Const 1963, art 9, § 29 nor MCL 21.233 suggests that plaintiffs bear the burden of proving precisely how much the school districts' costs increased as a result of the mandate. In fact, the language of MCL 21.233 implies the opposite. That section defines "necessary cost" as the "net cost of an activity or service provided by a local unit of government." The "net cost" is defined as "the actual cost to the state if the state were to provide the activity or service mandated as a state requirement . . . ." [*Id*. at 486-487.]

Because *Adair I* involved a per se violation of the POUM clause, we held that "a plaintiff need only establish that the state imposed on it a new or increased level of activity without providing any funding to pay for it." *Id*. at 487. As explained earlier, the pertinent difference between a per se and an underfunded POUM claim is that the latter only involves an inquiry into the sufficiency of the appropriation. Because the appropriation, consistently with our caselaw and legislative instruction, is measured by the actual cost to the state if the state were to provide the new activity, the burden to show that the Legislature's appropriation accurately reflects the state's costs is properly placed on the state. See *id*. at 489 ("[T]he Legislature is in a position far superior to plaintiffs' to determine what the actual cost to itself would be if it performed the increased recordkeeping and reporting duties. Proofs on this point are easily accessible to the state because it could ascertain the costs it would incur if it provided the new activity."). While *Adair I* held that local governments must have "necessary increased costs" associated with implementing the mandate that exceed a *de minimis* amount, the local governments' costs need not be quantified for the purposes of *measuring* the

9

sufficiency of the appropriation; whereas, the state's quantified costs if it were to implement the mandate are central to a claim that a POUM mandate was underfunded.

That is not to say that a plaintiff should be able to succeed under a POUM claim with a bare assertion that the state has underfunded the appropriation. I fully appreciate that we noted in *Adair I* that a plaintiff's burden "would likely [be] higher" when the Legislature did, in fact, appropriate funds, as opposed to the lack of any appropriation at issue in *Adair I*. See *Adair I*, 486 Mich at 480 n 29. Also, as the majority emphasizes, in 2007 a majority of this Court adopted MCR 2.112(M), which requires, in part, that a Headlee Amendment plaintiff "state with particularity the type and extent of the harm . . . ." Again, I think that "[t]he dispositive issue is the cost to the state if it were to provide the new or increased activity or service, not the cost incurred by the local governmental unit." *Adair I*, 486 Mich at 489. Thus, I would not apply this requirement in a manner that requires a plaintiff to arrive at the numeric difference between the state's actual costs and the amount that the state did in fact appropriate for the purposes of a pleading requirement or a plaintiff's ultimate burden of proof.

Instead, in keeping with *Adair I*'s burden-shifting framework, I would hold that to overcome the state's motion for summary disposition, a plaintiff must show that there is a genuine issue of material fact that the state underfunded the appropriation. See MCR 2.116(C)(10). Depending on the nature of the underlying subject matter of the mandate and the circumstances surrounding the mandate's enactment with its accompanying appropriation, I would imagine that proofs in this regard might vary from case to case. For example, as the majority accurately explains, the appropriations in this case followed our holding in *Adair I*. Plaintiffs assert that the appropriations were measured on the

10

basis of a cost study designed to bring the state into compliance with the Headlee Amendment, and, accordingly, they proffered detailed expert testimony about specific expenditures that were not accounted for in the cost study and the following appropriations. I agree with the Court of Appeals' conclusion that this evidence shows

> that plaintiffs stood ready to present some evidence that, if determined credible by the trier of fact, would have undermined the validity of the method used by the Legislature to determine the amount of the appropriations at issue and that would have shifted the burden of going forward with evidence to the state to present some evidence that the appropriations do fully fund the state's obligation under the POUM provision. [*Adair*, 302 Mich App at 316-317.[9]]

I also think that this conclusion is consistent with MCR 2.112(M) because, in alleging specific expenditures that had not been accounted for by the state's cost study, plaintiffs alleged the "extent" of the underfunding by claiming *what* the Legislature failed to value, albeit without quantifying what those expenditures would cost the state if it were to implement the mandate. See *The American Heritage Dictionary of the English Language* (1981) (defining "extent" as "[t]he range over which something extends; scope; comprehensiveness").[10]

---

[9] As the majority aptly explains, plaintiffs appealed defendants' motion for involuntary dismissal. I offer an analysis applicable to a motion for summary disposition under MCR 2.116(C)(10), however, in order to provide further explanation of my view of the parties' burdens. Nevertheless, I believe that the special master erred by granting defendants' motion for involuntary dismissal because I do not think that the special master was correct that "on the facts and the law the plaintiff[s] ha[d] shown no right to relief," given my view of plaintiffs' proper burden in the case. See *Samuel D Begola Services, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995).

[10] Citing *Oakland Co v Michigan*, 456 Mich 144, 166; 566 NW2d 616 (1997) (opinion by MARILYN KELLY, J.), the majority reasons that MCR 2.112(M) requires and our caselaw has "consistently announced" that Headlee Amendment plaintiffs must allege the type and *extent* of harm. However, I fail to see how either the court rule's or *Oakland Co*'s

11

Finally, the majority reasons that requiring plaintiffs "to establish the specific amount of funding . . . reduces litigation gamesmanship" and "avoids needless litigation." However, I disagree with the instant majority's "parade of potentially negative 'consequences'" that would occur if it declined to adopt the state's argument in this case. *Adair I*, 486 Mich at 491.[11] It is true that a POUM plaintiff may end up with a declaratory judgment that merely states that there was underfunding, which would require the Legislature to appropriate supplemental funding. Yet because the required appropriation is statutorily measured as the state's costs if it were to implement the mandate, there is no guesswork about local governments' costs and the appropriation, as the current majority insinuates. In my view, the fact that a plaintiff may file another claim alleging *further* insufficient funding, i.e., that the state *continues* to fail to comply with its Headlee Amendment obligation, is no reason to heighten a plaintiff's initial

---

reference to the "extent" of harm *necessarily* means that a POUM plaintiff alleging underfunding must show the specific dollar figure of underfunding. Moreover, to the extent that the majority finds *Oakland Co* relevant in this case on the basis of a rule that is often quoted in the context of Headlee Amendment claims—i.e., that because the MOS and POUM provisions are contained within the same amendment, they are read harmoniously, see, e.g., *Durant*, 424 Mich at 380 n 7—I continue to think that this general rule has limited application when the underlying issue involves a matter that is specific to one of the two provisions. See *Schmidt v Dep't of Ed*, 441 Mich 236, 278 n 15; 490 NW2d 584 (1992) (CAVANAGH, J., dissenting). See, also, *Judicial Attorneys Ass'n v Michigan*, 460 Mich 590, 616 n 5; 597 NW2d 113 (1999) (CAVANAGH, J., dissenting). And in my view, considering a POUM plaintiff's burden of proof *is* a consideration apart from a MOS plaintiff's burden of proof. See, generally, *Adair*, 279 Mich App at 511-513.

[11] The policy argument asserted by the majority was also a point of contention in *Adair I*. Compare *Adair I*, 486 Mich at 491 (opinion of the Court), with *Adair I*, 486 Mich at 510-513 (MARKMAN, J., dissenting).

12

burden. Stated differently, it is the *state's* duty in the first instance to adequately fund the mandate. As a result, when faced with an allegation that the state underfunded a mandate, I do not believe it is unreasonably cumbersome to place the burden on the state to show that it accurately measured the appropriation. That is because if it had complied with the POUM provision in the first instance, it would know exactly how the appropriation was measured, which, if accurate, would swiftly and effectively dispose of any allegations of underfunding.[12]

In light of my analysis, I respectfully dissent from the majority's holding that a Headlee Amendment plaintiff alleging that the state did not properly measure and fund a mandate that falls within the scope of the POUM provision must plead and prove a specific, quantified dollar amount of underfunding. As a result, I would affirm the

---

[12] The majority further supports its conclusion that a POUM plaintiff must prove the specific amount of the funding shortfall by, again, relying on a single statement made in *Oakland Co*, 456 Mich at 166 (opinion by KELLY, J.), that "future plaintiffs must allege the type and extent of the harm so that the court may determine if a [violation of Const, 1963, art 9, § 29] occurred for purposes of making a declaratory judgment. In that way, *the state will be aware of the financial adjustment necessary to allow future compliance* (emphasis added)." Viewed in context, *Oakland Co* was explaining that, while it is an atypical remedy, plaintiffs may obtain a monetary damage award for a Headlee Amendment violation when the state consistently refuses to comply with its funding obligations. As explained earlier, because the state is well equipped to determine how much an activity or service would cost if the state were implementing it, it does not have to rely on local governments to inform the state of the financial adjustment necessary to bring it in compliance with article 9, § 29. Indeed, if the contrary were true, the state would have to seek counsel from local governments before enacting *any* mandate falling under the POUM provision in the first place or risk violating of the Constitution every time such a mandate is made. In my view, that was not the intent of the above statement in *Oakland Co*.

13

judgment of the Court of Appeals and allow this case to continue in proceedings before the special master.

Michael F. Cavanagh