ADAIR v STATE OF MICHIGAN (ON REMAND)

Docket No. 230858. Submitted April 11, 2005, at Grand Rapids. Decided
August 4, 2005, at 9:00 a.m. Leave to appeal sought.

Daniel Adair and others, including school districts, intermediate
school districts, and taxpayers, brought an original action in the
Court of Appeals against the state of Michigan and others, seeking
a declaration that the state had failed to honor its funding
obligations under the second sentence of Const 1963, art 9, § 29,
the Headlee Amendment, with regard to certain activities and
services that state law or regulation obligated the plaintiff school
districts to provide. The Court of Appeals, HOLBROOK, JR., P.J., and
TALBOT, J. (SAAD, J., dissenting), granted summary disposition for
the defendants and dismissed the case. 250 Mich App 691 (2002).
The plaintiffs appealed to the Supreme Court, which affirmed in
part, reversed in part, and remanded, holding that the only claim
on which relief might be granted to plaintiffs was a record-keeping
requirement set forth in MCL 388.1752 and Executive Order No.
2000-9. 470 Mich 105 (2004).

On remand, the Court of Appeals *held*:

The Supreme Court instructed this Court to consider on
remand the claims advanced by the plaintiffs under the "new
activity or service" prong of the "prohibition of unfunded man-
dates" clause in the Headlee Amendment, Const 1963, art 9, § 29.
The plaintiffs have failed to present documentary support from
which it can be inferred that either MCL 388.1752 or Executive
Order No. 2000-9 mandates the school districts to actively partici-
pate in new activities of maintenance of data that the state
requires for its own purposes. A broad, fundamental, record-
keeping requirement existed before the Headlee Amendment was
passed, and its nature was not substantively changed by MCL
388.1752 or EO 2000-9. The state has mandated that the method
of transmittal be changed to be more efficient, more secure, and
more user-friendly, but clarifying nonsubstantive changes in an
earlier, existing state law does not constitute a new activity or
service. MCL 21.233(7).

Summary disposition and dismissal with prejudice granted to
the defendants.

*Thrun Law Firm, P.C.* (by *Dennis R. Pollard* and *Richard E. Kroopnick*), for the plaintiffs.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Jane O. Wilensky* and *D. J. Pascoe*, Assistant Attorneys General, for the defendants.

ON REMAND

Before: SAAD, P.J., and TALBOT and FORT HOOD, JJ.

TALBOT, J. This original action returns on remand from our Supreme Court to explore the factual support for plaintiffs' claim that the record-keeping obligations required of plaintiff school districts by MCL 388.1752 and Executive Order No. 2000-9 (EO) constitute new, unfunded mandates in violation of the second sentence of § 29 of the Headlee Amendment, Const 1963, art 9, § 29. *Adair v Michigan*, 470 Mich 105, 129-131, 133; 680 NW2d 386 (2004).[1] The state seeks summary disposition pursuant to MCR 2.116(C)(10). We hold that plaintiffs have failed to present documentary support from which it can be inferred that either MCL 388.1752 or the EO mandates the school districts to actively participate in the maintenance of data that the state requires for its own purposes. Accordingly, we grant summary disposition in favor of defendants and dismiss plaintiffs' remaining claims with prejudice.[2]

I

This action is brought pursuant to the second sentence of Const 1963, art 9, § 29, which is commonly

---

[1] For ease of reference, this case will be referred to as *Adair II* in subsequent citations.

[2] The motion for summary disposition is being decided without oral argument. MCR 2.119(E)(3), 7.206(D)(3).

referred to as the "prohibition on unfunded mandates" (POUM) provision. *Adair II, supra* at 111. Under the POUM provision, a plaintiff "must show that the state-mandated local activity was originated without sufficient state funding after the Headlee Amendment was adopted or, if properly funded initially, that the mandated local role was increased by the state without state funding for the necessary increased costs." *Id.* This does not mean, however, that, under a POUM analysis, every required change in school activities requires state funding under the Headlee Amendment. *Id.* at 112; *Judicial Attorneys Ass'n v Michigan*, 460 Mich 590, 603; 597 NW2d 113 (1999). "Headlee, at its core, is intended to prevent attempts by the Legislature 'to shift responsibility for services to the local government . . . in order to save the money it would have had to use to provide the services itself.' " *Adair II, supra* at 112, quoting *Judicial Attorneys Ass'n, supra* at 602-603.

Plaintiffs are school districts and taxpayers seeking a declaratory judgment that the state has failed to honor its obligation to reimburse the school districts for the necessary costs of maintaining certain records on behalf of the state. In their original complaint, plaintiffs alleged, among other claims, that the state required school districts to collect and maintain certain data regarding students, programming, and facilities and to transmit those data over the Internet to the state's Center for Educational Performance and Information (CEPI). Plaintiffs further alleged that those record-keeping obligations required the districts to actively maintain data that the state required for its own purposes. The state's failure to fund the districts' costs in carrying out those obligations, according to plaintiffs, violates the POUM provision of the Headlee Amendment.

The state moved for summary disposition on the ground that plaintiffs failed to state a claim for a violation of the POUM provision. The state asserted that the record-keeping functions required by MCL 388.1752 and the EO existed at the time the Headlee Amendment was ratified. As support for this assertion, the state relied on MCL 388.1552, as enacted by 1977 PA 90 and repealed by 1979 PA 94. This statutory provision required school districts to "furnish to the department [of education] those reports as the department considers necessary for the determination of the allotment of funds" under the State School Aid Act. Because it possessed broad powers to require school districts to collect and provide data under MCL 388.1552, the state asserted that the record-keeping functions required by MCL 388.1752 and the EO do not increase the level of an activity or service beyond that required in 1978. In the alternative, the state argued that the record-keeping functions required by MCL 388.1752 and the EO are not activities or services within the meaning of the POUM provision.

We had previously granted summary disposition in favor of the state, in a two-to-one decision, on the ground that "neither MCL 388.1752 nor Executive Order 2000-6, separately or in combination, mandate[s] a new activity or increase[s] the level of a state-mandated activity within the meaning of the POUM clause." *Adair v Michigan*, 250 Mich App 691, 711; 651 NW2d 393 (2002).[3] The majority observed that the record-keeping obligations existed by statute before the ratification of the Headlee Amendment. MCL 388.1752 merely clarified the scope of the preexisting record-keeping obligations, without substantively changing

---

[3] For ease of reference, this case will be referred to as *Adair I* in subsequent citations.

the nature of the obligations. *Adair I, supra* at 712. Citing MCL 21.233(7), the majority ruled, "Clarifying nonsubstantive changes in an earlier, existing state law does not constitute a new activity or service or increase in the level of an existing activity or service." *Adair I, supra* at 712.

With regard to the effects of the EO, the majority opined that the order mandated no new activity within the meaning of the POUM provision:

> The data addressed by the executive order [are] already in the possession of plaintiff districts and agencies in various forms as a by-product or necessary consequence of general school operations. Plaintiff school districts and agencies are already under a broad duty to report a variety of data pursuant to MCL 388.1752. To the extent that plaintiff districts and agencies are now required to report the information in a uniform manner through the Internet, we believe that such activity does not implicate art 9, § 29, because the state may require local units of government to take advantage of improved technology to streamline and increase the efficiencies of a process by which the public is served without running afoul of the goals of the Headlee Amendment. *Judicial Attorneys Ass'n, supra* at 605.
>
> Further, the gathering of this data and [their] transfer to a central location for use in evaluating the efficiency and effectiveness of the educational delivery process and in developing improved methods of providing elementary and secondary education are administrative functions that constitute the essence of the state's constitutional obligation to "maintain and support a system of free public elementary and secondary schools . . . ." Const 1963, art 8, § 2. In effect, the executive order executes a constitutional mandate. Accordingly, the activities required by the order fall outside the ambit of the restrictions imposed by the Headlee Amendment. *Durant* [*v State Bd of Ed*, 424 Mich 364, 387-388; 381 NW2d 662 (1985).] As observed by a panel of this Court in *Durant* [*v Dep't of Ed (On Remand)*, 129 Mich App 517, 524; 342 NW2d 591 (1983)], not all functions

performed by a school district are required by state law within the meaning of the Headlee Amendment. For these reasons, we grant summary disposition in favor of the state pursuant to MCR 2.116(C)(10) with regard to ¶ 22K of count III of the second amended complaint. [*Adair I, supra* at 713-715.]

Our Supreme Court vacated this Court's grant of summary disposition, finding that we "erred in concluding that the statute and the order do not mandate new activities within the meaning of the Headlee Amendment." *Adair II, supra* at 129. In doing so, the Court acknowledged that plaintiff school districts were under a broad statutory obligation to report to the state whatever information the statute required that predated the ratification of the Headlee Amendment. *Id.* It further acknowledged that "[t]he Headlee Amendment is not necessarily implicated when the state increases or changes what information it requires because the schools' obligation to provide that information has existed since before the time Headlee was effective." *Id.*

After these acknowledgements, however, the Court pointed out that plaintiffs had not only alleged that MCL 388.1752 and the EO required different data from the school districts, but also had alleged that the statute and the EO required plaintiffs to "actively participate in maintaining data that the state requires for its own purposes." *Id.* at 129-130. More simply stated, "plaintiffs here alleged new requirements that were not funded at all." *Id.* at 130. The Supreme Court reminded this Court that "[a]n off-loading of state funding responsibilities onto local units of government without the provision of funds presents a colorable claim under Headlee." *Id.* The Court then opined that plaintiffs had stated a claim on which relief could be granted with regard to the record-keeping activity. It remanded the matter to this Court to allow the parties to "explore the

factual support" for plaintiffs' allegations that the record-keeping activities "constitute[] a new, unfunded mandate in violation of the Headlee Amendment." *Id.* at 130-131.

On remand, plaintiffs filed their third amended complaint, at which point plaintiffs pleaded the nature of their record-keeping claim with more specificity. Plaintiffs alleged that Michigan's Governor established the CEPI on September 28, 2000, through EO 2000-9. According to plaintiffs, the CEPI implemented and administers the Michigan Education Information System. School districts use the information system to collect, maintain, update, and electronically transmit data pursuant to instructions prescribed by the CEPI. Plaintiffs represent that the data are generated for inclusion in six core data sets. Plaintiffs further allege that:

17. Prior to each required submission cycle, CEPI reviews, and often modifies the manner in which data is [sic] required to be reported by local school districts by updating the specifications for each of the hundreds of data fields, including adding, editing and eliminating data fields, and changing definitions and instructions for reporting.

18. In order to satisfy the CEPI requirements, plaintiff school districts are required, on an on-going basis, to expend significant amounts of time, at very considerable expense, in planning, preparing, training staff members and consulting with CEPI personnel, due to frequent changes in definition, data fields, and coding schemes and changes in directions as to how the information is to be reported and submitted.

After setting forth certain allegations regarding the nature of the information the school districts are required to collect and report to the CEPI, plaintiffs alleged that these mandated activities and services were first required of the school districts after *Durant v*

*Michigan,* 456 Mich 175; 566 NW2d 272 (1997),[4] was issued. Also according to plaintiffs, the state has failed to pay the school districts for the necessary increased costs of providing the required data to the state.

The state again seeks summary disposition. The state argues that it is entitled to summary disposition under MCR 2.116(C)(10) because the data collection and reporting activities are not post-*Durant I* activities, and our Supreme Court has already expressly ruled in this case that the state may increase or change the data that school districts must collect and maintain without implicating the Headlee Amendment. Further, the data at issue exist at the individual school district level and are already in the possession of each school district as a by-product or necessary consequence of general school operations.

The state also argues that it is entitled to summary disposition because (1) the limitations of the Headlee Amendment are only implicated when the state shifts its fiscal responsibility for school operations to local units of government, (2) plaintiffs cannot show any such shifting of responsibility, (3) the recording-keeping functions plaintiffs identify merely continue the local school districts' existing obligations to collect, maintain, update, and transmit data to the state, as required by state and federal law, (4) the requirement that school districts electronically transmit data in a particular format and according to certain specifications is an instance of the state mandating higher standards for existing obligations, which it can do without implicating or violating the Headlee Amendment, and (5) the changes made to the manner in which the school districts transmit data to the state are required to improve efficiencies of data reporting through the use of

---

[4] For ease of reference, this case will be referred to as *Durant I.*

current, advanced technologies and eliminate outdated, paper-based reporting and the inefficient Education Data Network, rather than off-load fiscal responsibility for school operations. The state maintains that any increased spending attributable to causes other than the off-loading of state funding responsibilities does not implicate the Headlee Amendment.

Plaintiffs respond that (1) the amount of data school districts are required to collect and transmit to the CEPI reflects a dramatic increase in the types of information that school districts must compile, maintain, and report, (2) the reporting requirements are extremely burdensome and extremely technical and have forced school districts to purchase additional equipment and devote significant amounts of staff time to comply with them, (3) although some of the information was previously reported to the state by the school districts, other information is being reported for the first time, and (4) the school districts are now required to continually update, aggregate, or disaggregate the data, which is a newly imposed obligation. Under these circumstances, plaintiffs contend, genuine issues of material fact exist with regard to whether the state has off-loaded state funding responsibilities onto local school districts.

Finally, plaintiffs assert that the Supreme Court, in its opinion in this case, rejected the state's argument that the changes made by the CEPI do not constitute new or increased levels of activities or services for purposes of the Headlee Amendment.

II

A motion brought pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342

(2004). We review the pleadings, affidavits, and other documentary evidence submitted, make all reasonable inferences therefrom, and determine whether a genuine issue of material facts exists. *Bertrand v Alan Ford, Inc,* 449 Mich 606, 617-618; 537 NW2d 185 (1995). A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ. *West v Gen Motors Corp,* 469 Mich 177, 183; 665 NW2d 468 (2003).

The movant must specifically identify the matters that have no disputed factual issues, MCR 2.116(G)(4); *Maiden v Rozwood,* 461 Mich 109, 120; 597 NW2d 817 (1999), and has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence, *Smith v Globe Life Ins Co,* 460 Mich 446, 455; 597 NW2d 28 (1999). To survive a motion for summary disposition, the nonmoving party must then produce evidence showing a material dispute of fact left for trial. *Dimondale v Grable,* 240 Mich App 553, 566; 618 NW2d 23 (2000). When the burden of proof at trial would rest on the nonmoving party, the nonmovant may not rely upon mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue of material fact. *Quinto v Cross & Peters Co,* 451 Mich 358, 362; 547 NW2d 314 (1996).

III

In this Court's previous decision, we found that the state was entitled to summary disposition with regard to the claims advanced by plaintiffs under both the "new activity or service" prong and the "increased level of an activity or service" prong of the POUM provision. *Adair I, supra* at 693, 711. Our Supreme Court, how-

ever, focused solely on the "new activity or service" prong of the POUM provision. *Adair II, supra* at 130-131. The more narrow focus of the Supreme Court's decision indicates an implicit rejection by the Court of plaintiffs' claim that MCL 388.1752 and the EO resulted in an unconstitutional increase in the level of an existing activity or service. Accordingly, on remand, the parties are limited solely to the question whether factual support exists for plaintiffs' claim that the record-keeping function required by the statute and the EO constitutes a mandated new activity for which the state has shifted its funding responsibility to the school districts by requiring the school districts to actively participate in maintaining data that the state requires for its own purposes. Stated another way, in order to survive summary disposition, plaintiffs must show that a genuine question of material fact exists with regard to whether the statute and the EO require the districts to collect and maintain data for which they have no use and would not collect and maintain but for the dictates of the CEPI and the state's need of the information for its own purposes.

The state supports its motion with the affidavits of Dr. Margaret Merlyn Ropp, the Director of the CEPI; Oren Christmas, the Manager of the Data Analysis and Reporting Services for the CEPI; Glenda Rader, the Deputy Director of State School Aid and Finance in the Department of Education; and Lynne Erickson, an education consultant for the CEPI, as well as certain technical documents. This documentation supports the state's position that the challenged record-keeping mandate requires school districts to produce data that the state required the districts to produce before the issuance of the EO, with the exception of certain data the districts are required to maintain and transmit to the Registry of Educational Personnel (REP). This

documentation also supports the conclusion that the reporting process created by the CEPI is more efficient, more secure, and more user-friendly than the prior reporting methods dictated by the state and employed by the districts.

Plaintiffs submit the affidavits of Tamra Arens, an operational assistant for the Birmingham Public Schools; Jane Holloway, a record support system analyst for the Birmingham Public Schools; Renee Koehn, a second operational assistant for the Birmingham Public Schools; Estralee Michaelson, the Director of Safe Schools and Student Services for the Farmington Public School District; and Mary Reynolds, the Executive Director of Business for the Farmington Public School District. Plaintiffs devote a significant portion of each affidavit to establishing the degree to which the record-keeping requirements of the CEPI have substantially increased the workload, and the associated labor and equipment costs, of the school districts and, thus, the level of state-mandated activities required of them. The remaining averments contained in the affidavits support plaintiffs' claim that the CEPI has mandated that school districts collect and maintain some new data to be transmitted to the REP, as well as the Single Record Student Database (SRSD) and the School Infrastructure Database (SID).

Plaintiffs well document that the mandates of MCL 388.1752 and the EO have resulted in the school districts acquiring new equipment; devoting increased staff time to collecting, maintaining, and transmitting the mandated data; and incurring the costs associated with equipment acquisition and labor reallocation. Such documentation is relevant only to a determination of whether the mandates violate the "increased level of service" prong of the POUM provision. As we have

already observed, however, our Supreme Court rejected plaintiffs' claim that MCL 388.1752 and the EO resulted in an unconstitutional increase in the level of an existing activity or service. Accordingly, the documentation is not relevant to this proceeding on remand, which is concerned with proof of an alleged violation of the "new activity or service" prong of the POUM.

This is not to say, however, that plaintiffs have failed to provide any documentation pertaining to the purported violation of the "new activity or service" prong. Indeed, plaintiffs provide affidavits containing factual averments from which it could be concluded that the school districts are required by the CEPI to collect and maintain some new data that they were not required to collect and maintain before 1997 with regard to the REP, the SID, and the SRSD. These affidavits, when juxtaposed against the documentation supplied by the state, create factual questions with regard to the nature and extent that the CEPI mandates the collection and maintenance of new information. These factual questions are not material, however, to the resolution of the question before us. As our Supreme Court indicated, the Headlee Amendment is directed at preventing the state from off-loading its obligations to avoid its funding responsibilities. *Adair II, supra* at 112, 130. The affidavits offered by plaintiffs are deficient in this latter regard. They contain no express factual averments indicating, or even supporting an inference, that the new data they are now required to collect and maintain are data for which the districts have no use and would not otherwise collect and maintain but for the dictates of the CEPI. Similarly, the affidavits offered by plaintiffs contain no express factual averments that these new data are used only by the state for its own purposes.

Accordingly, we find that plaintiffs' record-keeping claim cannot survive summary disposition in the absence of any factual support, either express or inferential, demonstrating that a genuine issue of material fact exists with regard to whether the dictates of MCL 388.1752 and the EO impermissibly shift a state obligation to the school districts to avoid the costs of the obligation. We grant summary disposition in favor of the state and dismiss plaintiffs' remaining claim with prejudice.