Young, C.J.
I. INTRODUCTION
This Court is yet again faced with a challenge to the Legislature’s education-related funding appropriation *94 for state-imposed mandates under the Headlee Amendment.[1] Plaintiffs are taxpayers and school districts seeking a declaratory judgment that the amount of funding appropriated by the Legislature to fund new and increased recordkeeping requirements is materially deficient. Consistent with our construction of the Head-lee Amendment and our court rules, we have required that plaintiffs bringing an action charging inadequate funding of a legislative mandate under the Headlee Amendment must allege and prove not only that the funding was insufficient, but the type and extent of the harm. Today we make clear that this burden includes the requirement that the plaintiff show the specific amount of underfunding where the Legislature has made at least some appropriation of funds.
The special master applied this burden of proof and dismissed plaintiffs’ claims when plaintiffs stated at trial that they would not provide proofs establishing the specific amount of underfunding. The Court of Appeals reversed, requiring plaintiffs only to provide evidence that the methodology used by the Legislature to determine the amount of the appropriation was materially flawed, and remanded the case to the special master for further proceedings. The Court of Appeals’ standard is inconsistent with this Court’s longstanding requirement that a plaintiff alleging inadequate funding must show the type and extent of the funding shortfall.
Plaintiffs were properly instructed regarding the burden of proof by the special master before trial and failed to offer proofs concerning the specific amount of the alleged shortfall. Thus, we reverse the judgment of the Court of Appeals and enter a judgment in favor of defendants.
*95 II. FACTS AND PROCEDURAL HISTORY
A. HISTORY OF ADAIR LITIGATION AND LEGISLATIVE ACTION
The legislatively imposed mandates at issue require that school districts collect and report certain information regarding school district performance to the Center for Educational Performance and Information (CEPI).[2] The CEPI was created through Executive Order 2000-9 and 2000 PA 297 and is entrusted to “[coordinate the collection of all data required by state and federal law from districts, intermediate districts, and postsecondary institutions”[3] and “provide information to school leaders, teachers, researchers, and the public,” including “[r]esearch-ready data sets for researchers to perform research that advances this state’s educational performance.”[4]
Initially, the state did not make an appropriation to fund the CEPI mandate. As a result, in 2000 plaintiffs commenced a Headlee Amendment action in the Court of Appeals. In the first Adair case decided by this Court, we held that the lack of funding for CEPI reporting requirements presented a “colorable claim under Head-lee” because the mandates “require[d] the districts to actively participate in maintaining data that the state requires for its own purposes,” a requirement that had not existed before that time.[5]
After a few additional trips between this Court and the Court of Appeals, the case culminated in Adair v *96 Michigan (Adair I).[6] In Adair I, this Court affirmed the Court of Appeals’ declaratory judgment that the Legislature had violated the prohibition of unfunded mandates (POUM) provision of the Headlee Amendment. We held that, in a case in which the state provides no funding at all to fund a mandate, a POUM Headlee claim does not require proof by a plaintiff of specific increased costs necessitated by the state mandate. In that situation, “a plaintiff need only establish that the state imposed on it a new or increased level of activity without providing any funding to pay for it.”[7]
In response to Adair 7, the Legislature enacted MCL 388.1752a,[8] which appropriated about $25 million for the 2010-2011 school year to reimburse local school districts for the cost of the CEPI recordkeeping mandate.[9] The Legislature also added an additional CEPI mandate, the teacher-student data link (TSDL), which requires reporting of data to allow districts “to assess *97 individual teacher impact on student performance.”[10] So, for the 2010-2011 school year, the Legislature made a separate appropriation in the amount of $8.4 million for the newly created TSDL mandate.[11] For the following school year, 2011-2012, the Legislature appropriated approximately $34 million to cover all of the CEPI record keeping requirements, which included money for the TSDL requirements (the “§ 152a appropriation”).[12] Additionally, for both of these school years, the Legislature made a “discretionary nonmandated payment” (the “§ 22b appropriation”).[13] However, these funds were conditioned on furnishing the data as required by the CEPI mandates. The condition currently reads as follows:
In order to receive an allocation under subsection (1), each district shall do all of the following:
(c) Furnish data and other information required by state and federal law to the center and the department in the form and manner specified by the center or the department, as applicable.[14]
B. THE CURRENT LITIGATION
Plaintiffs, more than 450 Michigan school districts together with one individual taxpayer from each district *98 filed an original action in the Court of Appeals[15] challenging the amount of the § 152a appropriation for school year 2010-2011 as inadequate to compensate the school districts for the CEPI requirements. Plaintiffs amended their pleadings to include a similar challenge to the following school year’s appropriation.[16]
The Court of Appeals assigned the case to a special master. After discovery, defendants moved for summary disposition under MCR 2.116(C)(10),[17] claiming that plaintiffs could not produce any evidence of the amount of necessary increased costs and that in any case, the § 22b appropriation fully funded the mandates. The master denied defendants’ motion, finding that plaintiffs had presented “more than sufficient evidence to show that the state has underfunded the CEPI mandates ... [and] the [TSDL] mandate.” He also ruled that
[pllaintiffs have a ‘higher burden’ which requires them to produce evidence of specific dollar-amount increases in the costs incurred in order to comply with the CEPI requirements. [Adair I, 486 Mich at 480] n 29 .... The Plaintiffs’ poignant argument that the general direction of Adair I mitigates requiring them to establish the insufficiency of the amount of appropriation overlooks the factual distinc *99 tion between Adair I (no appropriation made) and this case (appropriations made).
At that point, the master believed that “[o]nce the state establishes an appropriation, the Plaintiffs are equipped to attack whether the amount is sufficient. Indeed, the Plaintiffs’ expert has done just that.”
The case proceeded to trial, but during opening statements, plaintiffs’ counsel stated that they would not attempt to prove a specific dollar amount of underfunding, but rather intended to show through expert testimony that the Legislature’s methodology to determine the requisite amount of funding was materially flawed and thus that the appropriation could not be constitutionally adequate under Headlee. At the close of plaintiffs’ opening statement, on the basis of plaintiffs’ refusal to present proofs on the specific amount of alleged funding shortfall, defendants filed a motion for an involuntary dismissal,[18] claiming that plaintiffs were unable or unwilling to meet their burden. Plaintiffs responded that, because this was merely a declaratory action, they need not quantify the extent of the underfunding, but only show that an underfunding occurred. The special master granted defendants’ motion. In a written opinion, the master reiterated that plaintiffs had the burden to establish the specific amount of *100 underfunding. Because plaintiffs declined to offer those proofs, their case was dismissed.
Both parties filed objections, and the Court of Appeals reversed the special master’s ruling on the appropriate burden of proof, but affirmed in all other respects.[19] The panel concluded that the special master had relied too heavily on the fact that Adair I involved no legislative funding while this case involves a claim for underfunding. In the Court of Appeals’ view, Adair I stood for the proposition that neither Const 1963, art 9, § 29 nor MCL 21.233 required plaintiffs to prove how much their districts’ costs had increased as a result of a new or increased mandate.
Instead, stated the panel, plaintiffs had the “burden to present sufficient evidence to allow the trier of fact to conclude that the method employed by the Legislature to determine the amount of the appropriation was so flawed that it failed to reflect the actual cost to the state if the state were to provide the activity or service mandated as a state requirement. . . .”[20] The Court of Appeals concluded that plaintiffs stood ready to meet this burden through expert testimony, which a trier of fact could find “undermined the validity of the method used by the Legislature to determine the amount of the appropriations at issue .. . ,”[21] The panel remanded to the special master to reopen the proofs.
Both parties sought leave to appeal in this Court; we granted defendants’ application for leave to appeal.[22]
*101 hi. standard of review
Questions of constitutional and statutory interpretation are reviewed de novo.[23] An appellate court reviews de novo a trial court’s ruling on a motion for an involuntary dismissal.[24]
IV ANALYSIS
Because we are interpreting the Michigan Constitution, the proper focus is on the will of the people ratifying the amendment. “The primary objective in interpreting a constitutional provision is to determine the text’s original meaning to the ratifiers, the people, at the time of ratification.”[25] This is the rule of “common understanding,” which is described by Justice Cooley as follows:
A constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it. For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed.[26]
*102 This Court locates the common understanding of constitutional text by applying the plain meaning of the text at the time of ratification.[27] Interpretation of a constitutional provision also takes account of “the circumstances leading to the adoption of the provision and the purpose sought to be accomplished.”[28]
A. THE HEADLEE AMENDMENT AND IMPLEMENTING LEGISLATION
In 1978, the voters passed the Headlee Amendment by initiative. The Headlee Amendment was adopted with “the primary purpose of relieving the electorate from overwhelming and overreaching taxation.”[29] To effectuate its purpose, the amendment set forth “a fairly complex system of revenue and tax limits.”[30] One of these limitations is contained in Const 1963, art 9, § 25, which provides, “The state is prohibited from requiring any new or expanded activities by local governments without full state financing, from reducing the proportion of state spending in the form of aid to local governments, or from shifting the tax burden to local government.”
The Headlee Amendment provides for another set of limitations in article 9, § 29. The first sentence of that section provides:
The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law.
The second sentence of § 29 provides:
A new activity or service or an increase in the level of any *103 activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs.
The first sentence prohibits the state from reducing the state-financed proportion of an existing activity required of local governments; the second generally prohibits new mandates which increase the burden on local governments unless accompanied by funding to offset increased costs. Claims under the first sentence are referred to as “maintenance of support” or “MOS” claims. Claims under the latter sentence are referred to as “prohibition of unfunded mandates” or “POUM” claims. This appeal involves a POUM claim: the plaintiffs contend that the state failed to provide adequate funding for increased services under the CEPI mandates.
Shortly after the Headlee Amendment was enacted, the Legislature passed an act to implement the constitutional provisions.[31] The act requires the Legislature to “annually appropriate an amount sufficient to make disbursements to each local unit of government for the necessary cost of each state requirement. . . .”[32] “Necessary cost” means “the net cost of an activity or service provided by a local unit of government.”[33] “Net cost,” in turn, is defined as “the actual cost to the state if the state were to provide the activity or service mandated as a state requirement, unless otherwise determined by the legislature when making a state requirement.”[34]
*104 B. ACCEPTANCE OF GENERAL APPROPRIATION AS WAIVER
As an initial matter, defendants contend that plaintiff school districts’ acceptance of the “discretionary nonmandated payment”—the § 22b appropriation— constitutes a waiver of any claim that the Legislature has failed to fulfill its Headlee obligations. Because acceptance of the appropriation is conditioned on compliance with the CEPI mandates, defendants contend that such acceptance thereby waives any claim of a constitutional deficiency under the Headlee Amendment. “Waiver is the intentional relinquishment of a known right.”[35] The condition in MCL 388.1622b reads:
(3) In order to receive an allocation under subsection (1), each district shall do all of the following:
(c) Furnish data and other information required by state and federal law to [CEPI] and the department in the form and manner specified by [CEPI] or the department, as applicable.
The proper interpretation of a statute is rendered by reference to its plain language.[36] Examining the language, one searches in vain to find any notice that, by accepting the § 22b appropriation, plaintiffs have thereby relinquished their right to bring a constitutional challenge to the adequacy of funding provided by the Legislature. Indeed, all the § 22b appropriation requires is that the district comply with the statute’s *105 reporting mandates—to “furnish data and other information required by state and federal law to the center and the department”—in exchange for the allocation. The districts are bound to the terms of the condition upon acceptance of the appropriation, but the terms do not include a waiver of any Headlee claim.[37] The only thing the plaintiffs intentionally and voluntarily waived upon acceptance of these funds was the ability to ignore the condition requiring them to furnish data and information as required by the CEPI mandates.
C. APPROPRIATE BURDEN OF PROOF
This Court has considered Headlee claims arising under both the MOS and POUM sentences of § 29 and has consistently announced that a plaintiff making either claim under the Headlee Amendment must show *106 the type and extent of the alleged shortfall in order to prove its case. In Oakland Co v Michigan,[38] we considered whether, under the Headlee Amendment’s MOS provision, the state unconstitutionally reduced the ratio of financing for county foster care services. In remanding to the lower court for further proceedings, Justice MARILYN Kelly’s plurality opinion stated that “plaintiffs must allege the type and extent of the harm so that the court may determine if a § 29 violation occurred for purposes of making a declaratory judgment. In that way, the state will be aware of the financial adjustment necessary to allow for future compliance.”[39] The Court adopted this plurality position in the majority opinion of the 2004 Adair case, which concerned a POUM claim.[40] Thus, the Court has announced this standard as applicable to both of the sentences in § 29 of the Headlee Amendment, and has done so when the plaintiffs have requested only declaratory relief.
In 2007, the Michigan Court Rules were amended in order to clarify that a plaintiff bringing a Headlee claim must plead “with particularity the factual basis for the alleged violation . . . ,”[41] In an action involving § 29, “the plaintiff shall state with particularity the type and extent of the harm and whether there has been a violation of either the first or second sentence of that section.”[42]
While the requirement that a plaintiff must allege and prove the type and extent of the harm had been *107 articulated consistently, this Court recognized a narrow exception in Adair I. In that case, we held that, when the state failed to make any appropriation to fund an increased level of activity or service mandated by the state, the plaintiff need not establish the particular amount of increased costs.[43] Instead, if a plaintiff proves that the state required a new or increased level of activity or service without providing any funding, the burden shifts to the state “to demonstrate that no state funding was required because the requirement did not actually increase costs or the increased costs were not necessary.”[44]
This exception, however, is explained by the distinct factual scenario facing the Court in that case. We have recognized on multiple occasions that POUM claims are in some respects similar to MOS claims.[45] Significantly, MOS claims and POUM claims concerning an alleged underfunding are quite similar. Both types of claims require a close look at the Legislature’s appropriation in comparison with the mandate in order to evaluate whether the appropriation is sufficient to meet Headlee obligations. This calculus is qualitatively different from a POUM claim in which the Legislature failed to appropriate any funding at all. While the former involves at least some appropriation that the Legislature can argue is sufficient to meet its Headlee obligations, the latter involves the complete absence of funding. A POUM claim alleging no funding is a simpler claim to make, as explained in Adair I, because the Legislature can be said to have completely abdicated its funding *108 duty; all that needs to be shown is that the mandate required some increased level of activity or service.[46] This characteristic—the absolute lack of funding— separates Adair I from Oakland Co and the 2004 Adair case. Thus, Adair I is appropriately limited to situations in which the Legislature has not made any appropriation to cover the cost of a new or increased mandate and is inapplicable to § 29 claims in which some funding has been appropriated.[47]
Consistent with prior caselaw and our court rules, we hold that a plaintiff must allege and prove the specific amount of the purported funding shortfall in order to establish the “extent of the harm” caused by the Legislature’s inadequate funding.[48] In other words, to sustain a claim under the Headlee Amendment when the Legislature appropriated at least some amount of funding to cover the cost of a new or expanded mandate, a plaintiff must allege and prove the extent of the “necessary increased cost” of the new or increased activity or service.[49]
*109 Requiring a plaintiff to establish the specific amount of a funding is consistent with the Constitution and reduces litigation gamesmanship. By requiring a plaintiff to prove the extent of the underfunding, “the state will be aware of the financial adjustment necessary to allow for future compliance.”[50] In other words, if a plaintiff carries its burden, the Legislature will have a judicially determined amount that it must appropriate in order to comply with Headlee. If a plaintiff were required only to show flaws in the methodology by which the appropriation was determined, further determination of the precise cost would be needed, thus further delaying “full state financing” to the localities guaranteed by our Constitution.[51] The burden of showing the specific amount of funding shortfall is not only consistent with the language of the Headlee Amendment but avoids needless litigation.
d. application
Before trial, the special master properly made clear that “[p]laintiffs have a ‘higher burden’ which requires them to produce evidence of specific dollar-amount increases in the costs incurred in order to comply with the CEPI requirements.” Nonetheless, during their *110 opening statement, plaintiffs disclaimed any obligation to prove a specific dollar amount of damages, stated that they would not attempt such proofs, and asserted that they intended to prove only that the Legislature’s methodology for determining the amount of funding for the mandates at issue was flawed. Plaintiffs contended that they would carry their preferred burden by presenting expert testimony. Plaintiffs’ expert report concluded that the state’s appropriation was materially lacking because the determinations made by the state were inadequate and incomplete. While the report extensively documented the alleged problems with the Legislature’s methodology in calculating the § 152a appropriation, the report failed to offer any evaluation of the extent of the shortfall. Plaintiffs did not offer, nor did they intend to offer, proofs sufficient to create an issue of fact regarding whether they could carry their burden. Accordingly, we reverse the Court of Appeals’ ruling and reinstate the special master’s involuntary dismissal in favor of defendants because plaintiffs failed to offer facts that would entitle them to relief.[52]
Because our precedents as well as our court rules make clear that a plaintiff must allege and prove with specificity the extent of the harm incurred as a result of a legislative funding shortfall, we decline to remand the case for further proceedings. The special master put the plaintiffs on notice before trial that they bore the burden of establishing the specific amount of increased costs. Even though plaintiffs were apprised of their burden, they declined to prepare or offer proofs that would at least create an issue of fact regarding the extent of underfunding.[53]
*111 v CONCLUSION
We reaffirm and hold that a plaintiff claiming that the Legislature’s appropriation failed to fully fund the cost of a new or increased service or activity must allege and prove the specific amount of the shortfall. Plaintiffs failed to offer any proofs that could entitle them to relief. Thus, we reverse the judgment of the Court of Appeals in part and reinstate the special master’s order of involuntary dismissal.[54]
Markman, Kelly, Zahra, McCormack, and Viviano, JJ., concurred with YOUNG, C.J.

 Const 1963, art 9, §§ 25 to 34.

 MCL 388.1752.

 MCL 388.1694a(l)(a).

 MCL 388.1694a(l)(d)(z¿¿).

 See Adair v Michigan, 470 Mich 105, 129-130; 680 NW2d 386 (2004). We held that the remaining claims of Headlee violations were barred by res judicata or release, or failed to implicate the Headlee Amendment. See id. at 133.

 Adair v Michigan, 486 Mich 468; 785 NW2d 119 (2010) (Adair I). See also Adair v Michigan (On Remand), 267 Mich App 583; 705 NW2d 541 (2005); Adair v Michigan (After Remand), 474 Mich 1073 (2006); Adair v Michigan (On Second Remand), 279 Mich App 507; 760 NW2d 544 (2008).

 Adair I, 486 Mich at 486-487. That litigation ended in 2013 when this Court remanded, for a final time, on an issue concerning attorney fees. Adair v Michigan, 298 Mich App 383; 827 NW2d 740 (2012), rev’d 494 Mich 852 (2013). Adair v Michigan (On Fourth Remand), 301 Mich App 547; 836 NW2d 742 (2013), lv den 495 Mich 914 (2013).

 See 2010 PA 217.

 This statute, which has been amended yearly, currently reads in part:
As required by the court in the consolidated cases known as Adair v State of Michigan. Michigan supreme court docket nos. 137424 and 137453, from the state school aid fund money appropriated in [MCL 388.1611] there is allocated for 2014-2015 an amount not to exceed $38,000,500.00 to be used solely for the purpose of paying necessary costs related to the state-mandated collection, maintenance, and reporting of data to this state. [MCL 388.1752a(l), as amended by 2014 PA 196.]

 MCL 388.1694a(l)(d)(i), as amended by 2010 PA 204 (“Data shall include ... [d]ata sets that link teachers to student information, allowing districts to assess individual teacher impact on student performance and consider student growth factors in teacher and principal evaluation systems.”). This mandate was imposed after Adair I.

 See MCL 388.1694a(9), as amended by 2010 PA 204.

 See MCL 388.1752a, as amended by 2011 PA 62.

 See MCL 388.1622b(l), as amended by 2011 PA 62.

 MCL 388.1622b(3)(c), as amended by 2014 PA 196.

 Const 1963, art 9, § 32 provides that claims under the Headlee Amendment are brought as an original action in the Court of Appeals.

 Plaintiffs made two additional claims: (1) that changes to the teachers’ tenure act requiring annual teacher and administrator evaluations constitute Headlee violations; and (2) the manner of funding of the new mandates was unconstitutional because it unconstitutionally reduced per pupil funding. We denied plaintiffs’ cross-application for leave to appeal which sought review of those issues. Adair v Michigan, 495 Mich 937, 938 (2014).

 MCR 2.116(0(10) provides that the following is a ground for summary disposition: “Except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law.”

 The special master referred to the motion as one for “directed verdict and/or involuntary dismissal,” and the Court of Appeals referred to the motion as one for directed verdict, though the appropriate label is one for involuntary dismissal because it is a case without a jury. See MCR 2.504(B)(2) (providing that dismissal may be granted “[i]n an action, claim, or hearing tried without a jury... on the ground that, on the facts and the law, the plaintiff has no right to relief”); Samuel D Begola Servs, Inc v Wild Bros, 210 Mich App 636, 639; 534 NW2d 217 (1995) (treating the defendants’ motion for a “directed verdict” as one for involuntary dismissal because the trial court was sitting as the finder of fact).

 Adair v Michigan, 302 Mich App 305, 308; 839 NW2d 681 (2013).

 Id. at 316, quoting MCL 21.233(6) (quotation marks omitted).

 Adair, 302 Mich App at 316-317.

 Adair, 495 Mich 937. We directed the parties to brief
(1) which party has the burden of proving underfunding of a legislative mandate in a challenge under Const 1963, art 9, § 29, *101 (2) what elements of proof axe necessary to sustain such a claim, and (3) whether acceptance of a general appropriation from the Legislature which is specifically conditioned on compliance with reporting requirements pursuant to MCL 388.1622b([3])(c) waives any challenge to the funding level for those requirements under Const 1963, art 9, § 29. {Id. at 937-938.]

 Makowski v Governor, 495 Mich 465, 470; 852 NW2d 61 (2014).

 Samuel D Begola, 210 Mich App at 639.

 Wayne Co v Hathcock, 471 Mich 445, 468; 684 NW2d 765 (2004).

 Id. at 468, quoting Cooley, Constitutional Limitations, p 81.

 Hathcock, 471 Mich at 468-469.

 People v Tanner, 496 Mich 199, 226; 853 NW2d 653 (2014) (citation omitted).

 Durant v Michigan, 456 Mich 175, 214; 566 NW2d 272 (1997).

 Id. at 182.

 1979 PA 101, codified at MCL 21.231 et seq. The Legislature was required to implement the provisions of the Headlee Amendment by Const 1963, art 9, § 34.

 MCL 21.235(1).

 MCL 21.233(6).

 Id. “Necessary cost” does not include a cost that does not exceed a de minimis amount, defined as a cost not exceeding $300 per claim. MCL 21.233(6)(c); MCL 21.232(4).

 See Bailey v Jones, 243 Mich 159, 162; 219 NW 629 (1928).

 Ford Motor Co v City of Woodhaven, 475 Mich 425, 438-39; 716 NW2d 247 (2006) (“The primary goal of statutory interpretation is to give effect to the Legislature’s intent. The first step is to review the statute’s language. And if the statute is plain and unambiguous, then this Court will apply the statute as written.”) (citations omitted).

 Not only is no explicit Headlee waiver required, the language of § 22b suggests that the Legislature understood that there was no waiver of Headlee claims. In that very section, MCL 388.1622b(7) specifically contemplates potential Headlee claims by school districts against the state by setting up a procedure for reimbursing the districts in the event of a successful claim. The inclusion of this provision belies the defendants’ argument that acceptance of the appropriation waives any Head-lee claim. MCL 388.1622b(7) provides:
It is the intent of the legislature that all constitutional obligations of this state have heen fully funded.... If a claim is made by an entity receiving funds under this article that challenges the legislative determination of the adequacy of this funding or alleges that there exists an unfunded constitutional requirement, the state budget director may escrow or allocate from the discretionary funds for nonmandated payments under this section the amount as may be necessary to satisfy the claim before making any payments to districts....
Moreover, even though the condition does not have the effect the defendants contend it does, it still serves a purpose. It serves as an enforcement mechanism to ensure a district’s compliance with the mandate without requiring the state to bring a suit for declaratory or injunctive relief to do so.

 Oakland Co v Michigan, 456 Mich 144; 566 NW2d 616 (1997).

 Id. at 166 (Marilyn Kelly, J., plurality opinion) (emphasis added).

 Adair, 470 Mich at 119-120, quoting Oakland Co, 456 Mich at 166 (Marilyn Kelly, J., plurality opinion) (emphasis added).

 MCR 2.112(M).

 Id. Moreover, in a POUM action, “the plaintiff shall state with particularity the activity or service involved.” Id.

 Adair I, 486 Mich at 480.

 Id.

 See Adair, 470 Mich at 120 n 13; Judicial Attorneys Ass’n v Michigan, 460 Mich 590, 598 n 2; 597 NW2d 113 (1999) (stating that the two sentences must he read together because they were aimed at the alleviation of two possible manifestations of the same voter concern), quoting Schmidt v Dep’t of Ed, 441 Mich 236, 250-251; 490 NW2d 584 (1992).

 See Adair I, 486 Mich at 483-485.

 Indeed, even in Adair I, we noted that a “higher burden” would likely apply in POUM cases such as this, where “the state did appropriate funds for the new activity or service.” Id. at 480 n 29 (emphasis added).

 Defendants argue that plaintiffs should be held to a heightened “clear and convincing evidence” standard, relying on 46th Circuit Trial Court v Crawford Co, 476 Mich 131, 149; 719 NW2d 553 (2006). That case, however, concerned the narrow situation in which a court seeks to exercise its “inherent power” to compel counties to provide funding where the trial court serving those counties “has not received sufficient funding to operate at a serviceable level.” Id. at 160 (opinion by Maekman, J.). This standard was appropriate when, as in 46th Trial Court, separation of powers concerns warranted that the judiciary respect the coordinate powers of the other branches. That heightened evidentiary standard has never been applied in our Headlee jurisprudence, and we decline to do so today.

 Const 1963, art 9, § 29. There remains an issue whether the definition of “net cost” in the Headlee implementing legislation, MCL 21.233(6), which focuses on the cost to the state, is consistent with Const 1963, art 9, § 29, *109 which focuses the cost to the local unit of government. There is an apparent tension between the Constitution and the statute concerning the appropriate measure of cost. Members of this Court have noted this tension before, see Adair 1,486 Mich at 506 n 17 (Markman, J., dissenting), but because the issue was not raised by either party, we decline today to address it. Williams v Hofley Mfg Co, 430 Mich 603, 605 n 1; 424 NW2d 278 (1988) (refusing to consider a constitutional issue that, as here, "was not raised, preserved, or briefed by the parties”). As plaintiffs declined to show any specific dollar amount of cost before the special master, it is also not necessary to address the appropriate measure of cost today.

 Adair, 470 Mich at 119-120, quoting Oakland Co, 456 Mich at 166 (Marilyn Kelly, J., plurality opinion).

 Const 1963, art 9, § 25.

 See MCR 2.504(B)(2).

 As noted, the special master ruled in his opinion and order regarding defendants’ motion for summary disposition that ‘‘[pjlaintiffs have a ‘higher *111 burden’ which requires them to produce evidence of specific dollar-amount increases in the costs incurred in order to comply with the CEPI requirements.” Despite this ruling, plaintiffs maintained during their opening statement that “we do not have the burden to prove specific dollar damages accrued.” Defendants promptly moved for dismissal, observing that plaintiffs were apparently unwilling or unable to abide by the special master’s ruling. Plaintiffs responded that the substance of the special master’s ruling was that their expert report constituted “more than sufficient evidence to show that the state has [underfunded] the CEPI mandate,” so that they had no burden beyond this to show a specific dollar amount of damages.
We see no basis for plaintiffs’ position. The special master’s opinion and order stated that the expert report constituted “ ‘independent evidence’ of a genuine factual dispute because, viewed most favorably to the [p]laintiffs, it rebuts the [defendants’ argument that the [p]laintiffs have ‘refused to satisfy their burden of proof that the legislative appropriation is insufficient to pay their necessary increase[d] costs.’ ” That is, the special master only rejected defendants’ argument that plaintiffs failed to show that the legislative appropriation was “insufficient.” This rejection was consistent with his ruling that plaintiffs would be required to show a specific dollar amount at trial. Given that plaintiffs declined to offer proofs in accordance with the special master’s ruling, we now conclude that further proceedings are unwarranted.

 We do not disturb the balance of the Court of Appeals’ holdings not addressed in this opinion.