*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MILLS SIDING AND ROOFING, LLC,

        Plaintiff-Appellant,

v

MARGIE ROSARIO and ANGEL ROSARIO,

        Defendants-Appellees.

PUBLISHED
June 22, 2026
9:20 AM

No. 372914
Kalamazoo Circuit Court
LC No. 2024-000192-AV

Before: CAMERON, P.J., and KOROBKIN and BAZZI, JJ.

CAMERON, P.J.

This case requires us to interpret and apply the Home Solicitation Sales Act (HSSA), MCL 445.111 *et seq.* Plaintiff, Mills Siding and Roofing, LLC, sued defendants, Margie Rosario and Angel Rosario, after they refused to pay for a new roof that plaintiff installed on their home. During the trial in district court, defendants moved for a directed verdict, arguing that the HSSA precluded plaintiff from filing suit. The district court denied the motion, and defendants appealed the decision to the circuit court. The circuit court reversed, concluding the HSSA applied. Plaintiff now appeals the circuit court's decision by leave granted.[1] On appeal, plaintiff argues that the circuit court erroneously held that the HSSA governed the parties' transaction. We agree. Therefore, we reverse the circuit court's order and reinstate the district court's orders.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In April 2021, a "door knocker" employed by plaintiff went to defendants' home to offer a free roof inspection after a hailstorm. Defendant Margie Rosario (Margie) expressed interest in a roof inspection, prompting one of plaintiff's sales associates to contact her to schedule an inspection. The sales associate inspected defendants' roof and showed Margie pictures he took of hail damage. Margie then filed a claim with defendants' insurance provider, which sent an adjuster to evaluate the damage. Margie informed plaintiffs' sales associate of when the insurance adjuster

---

[1] *Mills Siding and Roofing LLC v Rosario*, unpublished order of the Court of Appeals, entered April 28, 2025 (Docket No. 372914).

would be there, and the sales associate was present at the home for the insurance inspection. After the insurance adjuster verified the damage and the insurance claim was approved, Margie contacted plaintiff's sales associate to come back to her home. The sales associate returned on a different day to defendants' home with a written agreement to replace the roof, which Margie signed at defendants' home. Plaintiff then replaced defendants' roof.

The parties later discovered that the shingles plaintiff used had a manufacturing defect, which plaintiff reported to the manufacturer. The manufacturer approved a warranty claim, but defendants refused to make any additional payments to plaintiff for the roof replacement because they were dissatisfied with plaintiff's workmanship. As a result, plaintiff filed suit in district court.

During trial, defendants moved for a directed verdict, arguing that the written agreement Margie signed failed to comply with a mandatory disclosure requirement in the HSSA, thereby making the agreement unenforceable, and entitling defendants to dismissal of the lawsuit. Specifically, defendants argued that plaintiff was precluded from seeking payment under the contract because the parties' written agreement did not notify defendants of their right to cancel the contract within three business days of signing the agreement as required by the HSSA. The district court denied the motion, reasoning that the mere fact that the agreement was signed at defendants' home did not automatically implicate the HSSA. Rather, it found that the parties' conduct after plaintiff's initial door-knocker solicitation took the agreement outside the scope of the HSSA. The district court ultimately found in favor of plaintiff. On appeal, the circuit court reversed the district court's ruling, concluding that the HSSA did apply, and remanded the case for entry of an order granting defendants' directed-verdict motion and dismissing the case. Plaintiff now appeals.

## II. STANDARDS OF REVIEW

We review a circuit court's review of a district court's decision de novo. *Noll v Ritzer*, 317 Mich App 506, 510; 895 NW2d 192 (2016). Although defendants framed their motion as one for a directed verdict, because this was a bench trial, the "appropriate label is one for involuntary dismissal because it is a case without a jury." *Adair v Michigan*, 497 Mich 89, 99 n 18; 860 NW2d 93 (2014). "The involuntary dismissal of an action is appropriate where the trial court, sitting as the finder of fact, is satisfied at the close of the plaintiff's evidence that on the facts and the law the plaintiff has shown no right to relief. MCR 2.504(B)(2)." *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995) (quotation marks omitted). We review the trial court's decision on the motion for involuntary dismissal de novo but review its factual findings for clear error. *Id*. "A trial court's findings are clearly erroneous only where we are left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). Because this appeal concerns the district court's denial of defendants' motion, we only consider the facts as they were known at the time of the district court's ruling. That is, our review is limited to whether the evidence submitted at the time the motion was made supported the district court's ruling.

## III. ANALYSIS

Plaintiff argues that the circuit court erred by reversing the district court's order denying defendants' motion for a directed verdict. We agree.

The HSSA defines a "home solicitation sale" as:

> [A] sale of goods or services of more than $25.00 in which the seller or a person acting for the seller engages in a personal, telephonic, or written solicitation of the sale, the solicitation is received by the buyer at a residence of the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for the seller. [MCL 445.111(a).][2]

Thus, a sale must have four specific elements to qualify as a home solicitation sale under the HSSA: (1) it must be for goods or services for more than $25; (2) the seller or seller's representative solicits the sale personally, over the telephone, or in writing; (3) the solicitation is made at the buyer's residence; and (4) the buyer's agreement to the sale is "there given" to the seller or seller's representative.

Relevant here, the HSSA mandates that, if a sale qualifies as a home solicitation sale, the resulting sales contract must include a notice of cancellation that informs the buyer of their right to cancel the agreement within three business days of signing. MCL 445.113(1). Failure to comply with this requirement renders the contract unenforceable. MCL 445.117 ("No person may bring any action in any court of this state for the collection of any home solicitation sale contract without proving that such person was at all times in compliance with this act."). Here, the written agreement did not include a cancellation notice of any kind. Thus, the question is whether this transaction qualifies as a home solicitation sale such that the three-day cancellation notice was required under the HSSA.

"The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Gleason v Kincaid*, 323 Mich App 308, 317-318; 917 NW2d 685 (2018). "When determining the intent of the Legislature, a court must first look to the specific language of the statute." *Patrick v US Tangible Investment Corp*, 234 Mich App 541, 545-546; 595 NW2d 162 (1999). "The fair and natural import of the terms employed, in view of the subject matter of the law, should govern." *Id*. at 546. "If the language is clear, then the Legislature must have intended the meaning it plainly expressed, and the statute must be enforced as written." *Id*.

It is undisputed that the sale at issue was for more than $25 and that the parties' relevant interactions occurred at defendants' home. We must therefore decide whether Margie's agreement to the sale was "there given."

The term "there given" is not defined in the statute. Thus, we turn to the dictionary to discern its plain and ordinary meaning. *San Marino Iron, Inc v Haji*, 341 Mich App 634, 639; 991 NW2d 828 (2022). Merriam-Webster defines the word "there" as "in or at that place" or "at that point or stage." *Merriam-Webster's Collegiate Dictionary* (12th ed). These distinct definitions demonstrate that the word "there" can refer to a specific location, time, or both, depending on the context in which the word is used. Fortunately, binding precedent resolves this definitional issue:

---

[2] This definition has various exceptions that do not apply to this case. MCL 445.111(a)(*i*)-(*vii*).

the term "there given" means that the seller's solicitation and the buyer's agreement must occur at the same time and at the same place (at the buyer's residence). Because that did not occur here, defendants' HSSA argument fails.

The first published case that examined the HSSA was *Brown v Jacob*, 183 Mich App 387; 454 NW2d 226 (1990), rev'd 439 Mich 865 (1991) (*Brown I*). In *Brown I*, the buyer hired a home repair contractor and signed a service agreement while the contractor was still at the buyer's home providing an estimate. In a divided opinion, this Court held that the transaction qualified as a home solicitation sale under the HSSA. *Id*. at 391-392. But in *Brown v Jacob*, 439 Mich 865 (1991) (*Brown II*), our Supreme Court reversed "for the reasons stated" in *Brown I*'s dissenting opinion. That dissenting opinion argued that the transaction at issue was not a home solicitation sale because the buyer contacted the seller first. *Brown I*, 183 Mich App at 392-395. Relevant to the development of our caselaw, the dissent explained the purpose and scope of the HSSA:

> The instant situation is not the type of transaction that the Michigan HSSA was designed to regulate. The legislative histories of these statutes indicate that their purpose was to protect consumers from intrusions into their homes by door-to-door and telephone solicitors. In those circumstances, the consumer has not yet prepared himself or herself for the negotiation process or braced himself or herself for the possibility of high-pressure sales tactics. The consumer is therefore in a uniquely vulnerable position and is susceptible to an unwanted sale of consumer goods. The home solicitation sales act serves to protect the consumer from such vulnerabilities. [*Id*. at 395.]

This Court later applied this same reasoning in *Patrick*, concluding that the HSSA's term "there given" required that the solicitation and the agreement occur at the same time. *Patrick*'s interpretation and application of the term "there given" is equally applicable here. This Court held in *Patrick* that the agreements at issue "were not signed in the home *at the time the sales presentation was given*. In fact, the contracts were not signed until the following month." *Patrick*, 234 Mich App at 545 (emphasis added). Accordingly, this Court held that, "[b]ecause the purchase agreement was not *there given* at the place of the sales presentation, the transaction [was] outside the scope of the [HSSA]." *Id*. 547. *Patrick* supported its analysis by relying on the dissent's reasoning in *Brown I* that the plaintiffs were "not the vulnerable consumers that [the HSSA] was created to protect[,]" because they "did not assent to the purchase agreements until *after* defendant's agent left [their] home[.]" *Id*. Binding precedent establishes that, in order for a buyer's agreement to be "there given" under the HSSA, it must occur at the same time and place as the solicitation of the sale. *Id*.[3]

---

[3] *Patrick* buttressed its reasoning by adopting the dissent's assessment of the "spirit and purpose[]" of the HSSA in *Brown v Jacob*, 183 Mich App 387, 395; 454 NW2d 226 (1990), rev'd 439 Mich 865 (1991):

> The legislative histories of these statutes indicate that their purpose was to protect consumers from intrusions into their homes by door-to-door and telephone solicitors. In those circumstances, the consumer has not yet prepared himself or

Because the term "there given" imposes a temporal connection to the solicitation giving rise to the agreement, we must next determine which of the parties' various interactions constituted plaintiff's "solicitation of the sale[.]" MCL 445.111(a). The HSSA does not define the term "solicitation;" therefore, we again turn to the dictionary to discern its plain and ordinary meaning. *San Marino Iron, Inc*, 341 Mich App at 639. Merriam-Webster provides various definitions of the word "solicit." Relevant here, these definitions include "to make petition to," "to approach with a request or plea," and "to try to obtain by usu[ally] urgent requests or pleas." *Merriam-Webster's Collegiate Dictionary* (12th ed). Considering these definitions in the context of a solicitation of a *sale*, the statute considers a seller's interaction with a buyer, at the buyer's home, for the purpose of obtaining a sale. See also *Black's Law Dictionary* (12th ed) (defining solicitation as "[t]he act or an instance of requesting or seeking to obtain something[.]").

We conclude that the door knocker's interaction with defendants constituted a solicitation of the sale under the HSSA. The relevant trial testimony established that plaintiff, a roofing company, employed door knockers to canvass hundreds of homes in defendants' neighborhood after a hailstorm. Plaintiff's sales associate testified that "Door knockers are just guys that either go door to door or if we're working on a roof, maybe, nearby and then go to a neighbor and say, 'Hey, are you interested in us taking a look at your roof?' " The sales associate confirmed that the door knockers's job is to offer a service for the purpose of making a sale: "[They] go to homeowners, at their home, knock on the front door, and say, 'Hey, we've got a service we can provide for you.' " Then plaintiff goes "to the homeowner, knock[s] on their door, and [says], 'We can get you a new roof, if you have storm damage, working with your insurance company[.]' " This testimony establishes that the purpose of the door knocker's visit to defendants in this case was to get a roofing job by offering a free roof inspection and assistance dealing with insurance claims.[4] Viewing this trial testimony and all legitimate inferences in the light most favorable to

herself for the negotiation process or braced himself or herself for the possibility of high-pressure sales tactics. The consumer is therefore in a uniquely vulnerable position and is susceptible to an unwanted sale of consumer goods. The home solicitation sales act serves to protect the consumer from such vulnerabilities.

We agree with plaintiff that this reasoning provides further support to the district court's denial of a directed verdict in this case because Margie's reengagement with plaintiff after the initial solicitation demonstrates that she was not the vulnerable consumer in need of the HSSA's protection against high-pressure sales tactics. Nevertheless, consultation of the legislative history of the HSSA is inappropriate because the statute itself is clear and unambiguous, and "we assume that the Legislature intended its plain meaning," and must enforce it as written. *Rouch World, LLC v Dep't of Civil Rights*, 510 Mich 398, 410; 987 NW2d 501 (2022) (quotation marks and citation omitted). It is only if the statute is ambiguous that consulting the legislative history "to determine the underlying intent of the Legislature[]" is appropriate. *Id*. (quotation marks and citation omitted).

[4] Indeed, during trial, defense counsel made this very point when he noted that plaintiff obtained roofing contracts with homeowners when it "knock[ed] on their door and—and solicit[ed] for new roofs[.]"

plaintiff, there is ample evidence in the record that the door knocker's interaction with defendants constituted a solicitation. *Wilkinson*, 463 Mich at 391.

Margie did not sign the sales contract until long after the door knocker's solicitation. In fact, the record reflects that at least two weeks—possibly more—had elapsed between the door-knocker solicitation and the sale. Accordingly, Margie's agreement was not "there given" under the HSSA and was not subject to the HSSA's notice requirements.[5]

We reverse the circuit court's order and reinstate the district court's orders.

/s/ Thomas C. Cameron
/s/ Mariam S. Bazzi

---

[5] We decline to establish a bright-line rule for determining how much time must elapse between the initial solicitation and a buyer's agreement for the agreement to be considered "there given" under the HSSA. That determination depends on the particular facts and circumstances of each case. Because the facts here show that considerable time elapsed between the initial solicitation and Margie's eventual assent, the transaction is beyond the scope of the HSSA.